## HESS'S DEPARTMENT STORES, INC., Plaintiff–Appellant,

v.

## ERNEST W. HAHN, INC., dba The Hahn Company, Defendant–Appellee.

### No. 89–5644.

United States Court of Appeals, Sixth Circuit.

Argued March 8, 1990.

Decided April 27, 1990.

Robert A. Finley, Robert H. Green, Kennerly, Montgomery & Finley, Knoxville, Tenn., Steven A. Bergstein (argued), Frank, Fran, Penn & Bergstein, Allentown, Pa., for plaintiff-appellant.

Douglas S. Tweed (argued), Hunter, Smith & Davis, Jimmie C. Miller, Kingsport, Tenn., for defendant-appellee.

Before KENNEDY and RYAN, Circuit Judges, and SMITH, District Judge.*

KENNEDY, Circuit Judge.

Appellant Hess's Department Stores (Hess's) appeals the District Court's order granting summary judgment in favor of appellee Ernest W. Hahn, Inc. (Hahn). Finding no error in the District Court's construction of the lease, we AFFIRM.

Hess's operates a retail store in the Fort Henry Mall (Shopping Center) in Kingsport, Tennessee. Hahn owns the Shopping Center and leases premises to Hess's under a written agreement. Hahn has recently agreed to lease premises at the Shopping Center to Proffitt's, another department store. To provide the premises for Proffitt's, Hahn intends to construct an addition to the Shopping Center. The addition would be built adjacent to Hess's store, occupying space currently used for parking. Once built, the addition would block an entrance to a common area near Hess's store and a view of the store from an adjacent street.

Hess's argues that because Hahn's proposed expansion would eliminate a portion of its customers' parking and remove an entrance to its store, the expansion would violate its rights under the Lease Agreement. Hess's seeks an injunction, rent abatement and damages.

Hahn argues that the lease agreement is unambiguous and authorizes it to build the proposed addition. Hahn asserts its right to build on the following two sections of the lease agreement:

Section 5.1 *Common Areas.* Landlord shall make available within the Shopping Center such common areas ... as Landlord in its sole discretion shall deem appropriate.... Landlord reserves the right to change from time to time the size, location, nature and use of any common area, to sell or lease any portion thereof, and to make additional installations therein and to move and remove the same; provided that Landlord shall at all times maintain the parking ratio set forth in Section 1.1N.

Section 10.1 ... Landlord also reserves the right to construct other buildings or improvements in the Shopping Center from time to time and to make alterations thereof or additions thereto and to build additional stories on any such building or buildings so constructed and to build adjoining same, except as provided in Section 8.3 and Section 5.1, and subject to the parking ratio required by Section 1.1N.

Section 1.1N provides that the parking ratio is "5.5 cars per 1,000 square feet of leasable area, as shown on Exhibit 'B.' "[1] Section 8.3 pertains to signs, awnings and canopies. Hahn contends that its right to construct an addition is restricted only by the requirement of Section 1.1N's parking ratio.

Hess's first argues that the terms of the lease are ambiguous and that therefore the court should have relied upon the intent of the parties to interpret the lease terms. The intent of the parties, Hess's argues, is a genuine issue of material fact. Specifically, Hess's argues that an ambiguity arises between sections 5.1 and 5.2. Section 5.1 is set forth above. Section 5.2 provides:

Tenant ... shall have the non-exclusive right, in common with Landlord and all others to whom Landlord has or may hereafter grant rights, to use the common areas as designated from time to time by Landlord subject to such reasonable rules and regulations as Landlord may from time to time impose, including the designation of specific areas in which cars owned by Tenant, its concessionaires, officers, employees and agents must be parked.... Landlord may at any time close temporarily any common area to make repairs or changes, to prevent the acquisition of public rights in such area or to discourage noncustomer parking; and Landlord may do such other acts in and to the common areas as in

---

* The Honorable George C. Smith, United States District Court for the Southern District of Ohio, sitting by designation.

1. Exhibit B is the site plan for the Shopping Center.

its judgment may be desirable to improve the convenience thereof.

■ Hess's argues that although section 5.1 purports to reserve to the landlord the ability to retain absolute control over the common areas and parking facilities, section 5.2 provides that the landlord will only close common areas temporarily. Therefore, appellant argues, the lease is ambiguous. We disagree. Construing the provisions so as to avoid a conflict, we find the sections to be consistent with each other. Section 5.2 does not permit the landlord to close common areas *only* temporarily. Rather, the provision allows the landlord to do so, without limiting the landlord's rights to alter the common areas pursuant to section 5.1.

■ Section 5.2 also provides that "[t]enant shall not at any time interfere with the rights of Landlord and other tenants ... to use any part of the parking areas and other common areas." Appellant argues that this clause creates a reciprocal restrictive covenant which would prohibit Hahn and other tenants from interfering with Hess's rights to use of the parking areas and other common areas. We do not find that this section creates an ambiguity in the lease. Hess's has the right to use the common areas that exist, while Hahn retains the right to alter the common areas.

Appellant next argues that section 2.2 of the lease gives rise to factual issues that ought not to have been resolved by the District Court. Section 2.2 provides that the Shopping Center will "be developed substantially as shown in Exhibit B," the site plan of the Shopping Center. Hess's argues that "[i]n light of the proposed construction of Proffitt's, a factual issue arises as to whether the construction of the additional building complies with Hahn's requirement to develop the shopping center substantially as shown in Exhibit B which does not provide for an additional building." We do not find this argument persuasive. The lease as a whole requires that the mall initially be developed as shown in Exhibit B, but permits the landlord to modify the common areas at a later time. The lease is not ambiguous in this regard.

Similarly, appellant argues that the following provisions of a 1979 Lease Modification Agreement raise factual issues. Paragraph 6 of the Lease Modification Agreement No. 2 provides in part as follows:

6. Section 3.1 is supplemented by adding the following provision thereto:

Notwithstanding the provisions of this Section 3.1 to the contrary, Landlord agrees that its obligations to provide space shall be governed, where applicable, by the provisions of this Section 3.1 and Exhibit "C" to this Lease.

Exhibit "C" to the Lease Modification Agreement No. 2 provides in part:

Beneficial Occupancy for the purpose of the Agreement shall commence when all work to be performed by the Landlord is complete and acceptably tested. Completed work will include parking areas adjacent to the Demised Premises.

These provisions do not render the lease ambiguous. The modification which also provided for an increase in rent merely provides that beneficial occupancy will begin when work on the parking areas adjacent to the demised premises is complete. The modification does not provide that such parking areas must remain unchanged. Rather, the lease, when read as a whole, reserves the right of the landlord to alter all common areas.

Section 2.2(b) provides that "the Shopping Center will be comparable in construction quality and appearance to Northgate Mall, Chattanooga, Tennessee, and will be operated and maintained upon comparable standards as said Northgate Mall is operated and maintained." Appellant contends this clause gives rise to the factual issue of whether the Shopping Center, with the change in the common area, is comparable to Northgate. We agree with appellee that Hess's has not submitted any factual evidence tending to create a genuine issue of material fact as to whether the proposed construction would render the Shopping Center different from Northgate.

The lease also provides that the leased premises:

shall extend to the exterior faces of all walls or to the building line where there is no wall, or to the center line of those walls separating said premises from other leased premises in the Shopping Center, together with the appurtenances specifically granted in this lease....

Appellant argues that the proposed construction of Proffitt's calls for the use of an existing exterior wall, and because this wall is part of Hess's demised premises as a common wall, the proposed construction would constitute a taking of a portion of Hess's premises. We agree with the District Court that because the lease "defines Hess' premises in the disjunctive" and provides that the premises "may extend to 'the centerline of those walls separating said premises from other leased premises in the Shopping Center,'" section 2.3 does not give rise to a factual issue.

 Appellant next argues that the proposed construction interferes with its implied covenant of quiet enjoyment. The District Court properly responded to this argument that "[a] covenant for quiet possession is not broken until eviction, actual or constructive." *Hayes v. Ferguson*, 83 Tenn. 1, 7 (1885).

Appellant also argues that its predecessor in interest obtained easement rights in the common areas and parking facilities, and that therefore Hahn may not interfere with its rights in those areas. Appellant relies on *In Re Tipton*, 18 B.R. 803 (E.D. Tenn.1982) for this proposition. In *Tipton*, however, the lease failed to reserve any rights to the landlord to change the common areas. Further, the leases involved in that case expressly conveyed easements in the common areas to the tenants. The lease in the present case not only fails to convey such a possessory interest, but expressly reserves the right of the landlord to change the common areas. Thus *Tipton* is not analogous to the present case.

Appellant also argues that the proposed construction would adversely affect its parking, access and visibility.[2] Appellee responds that the lease was clearly negotiated, and upon execution, reserved to tenant only the right to insist upon the requisite parking ratio. We agree. The lease is silent with respect to access and visibility. With respect to parking, the lease requires only that the parking ratio of 5.5 cars per 1,000 square feet be maintained. The proposed construction is consistent with the maintenance of this ratio.[3]

Because we find that there is no genuine issue of material fact and no error in the District Court's construction of the lease agreements, we AFFIRM its judgment.

---

**2.** "Visibility" refers to the visibility of the store from Fort Henry Drive.

**3.** Although the affidavit of Mr. Antonazzo indicates that he believes the proposed reconfiguration of parking would result in a parking ratio lower than that required, his opinion was predicated upon an assumption that all parking spaces must be within 500 feet of Hess's store. No such requirement exists in the lease.