Robert W. GREDIG, Jr., and Donald J. and Anita Gredig, Plaintiffs–Appellees,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Aug. 19, 1994.

Rehearing Denied Sept. 16, 1994.

Application for Permission to Appeal Denied by Supreme Court Jan. 3, 1995.

John T. Johnson, Jr., Adrienne L. Anderson, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, for appellant.

David T. Black, C. Edwin Shoemaker, Kizer & Black, Maryville, for appellees.

SUSANO, Judge.

This appeal involves a question of insurance coverage of losses resulting from a fire which consumed a house owned by the Plaintiff Robert W. Gredig, Jr. ("Robert"), under a homeowner's policy issued to Robert by the Defendant. At the time of the fire, Robert had vacated his house, and it was then being occupied by Robert's brother, the Plaintiff Donald J. Gredig ("Donald"), and the latter's wife, the Plaintiff Anita Gredig. The trial court found that the policy was ambiguous, and held that it should be construed to provide coverage for Robert's loss of his house and the loss of personal property suffered by Donald and Anita. The Defendant has appealed, arguing that the policy does not afford coverage for either loss.

I

The operative facts are not in dispute. The homeowner's policy in question was is-

sued in Robert's name for the policy period April 22, 1992, to April 22, 1993. It covered a house owned by Robert at 1554 Mt. Tabor Road in Maryville. In August, 1991, and prior to the time that the policy was renewed for the term beginning April 22, 1992, Robert and Donald and their respective spouses agreed in writing to trade houses. Pursuant to that agreement, and in October, 1991, Robert and his wife moved into Donald's house at 2111 Alnwick Boulevard, Maryville, and Donald and his wife moved into the residence on Mt. Tabor Road. It was agreed that each would make the other's house payment and that they would exchange deeds when both houses were paid for. The Defendant was not notified of the switch. On August 1, 1992, the Mt. Tabor Road house was totally destroyed by fire of an electrical origin. The fire also caused a significant loss of personal property belonging to Donald and Anita.

## II

The parties focus on the following pertinent language in the policy:

### DEFINITIONS USED THROUGHOUT THIS POLICY

The terms defined below appear in bold type throughout this policy:

1. **"You"** and **"your"** means the Policyholder named in the Declarations and spouse if living in the same household.

 \* \* \* \* \* \*

7. **"Insured Person"** means:

 (a) you;

 (b) **your** spouse or the relatives of either residing in your household; ...

 \* \* \* \* \* \*

11. **"Residence premises"** means the one or two family dwelling where **you** reside, which is described in the Declarations, including the immediate grounds not used for **farming.**

 \* \* \* \* \* \*

## SECTION I

## PROPERTY PROTECTION

### DWELLING COVERAGE (Coverage A)

**We** cover:

1. Your dwelling, including structures attached to it, at the **residence premises.** The dwelling must be occupied by you and used as your private residence.

 \* \* \* \* \* \*

### CONDITIONS APPLYING TO SECTION I [Property Protection]

 \* \* \* \* \* \*

13. **Vacancy Or Unoccupancy**

 The **residence premises** may be unoccupied for a period of 120 consecutive days without any reduction in coverage except where this policy specifies otherwise. If the **residence premises** is still unoccupied after 120 consecutive days, coverage will be reduced to 65% of the amount specified for coverages A [Dwelling Coverage], B and C [Personal Property Coverage].

 The **residence premises** may be vacant for a period of 60 consecutive days without any reduction in coverage except where this policy specifies otherwise. If the **residence premises** is still vacant after 60 consecutive days, coverage will be reduced to 65% of the amount specified for coverages A, B and C.

 \* \* \* \* \* \*

### GENERAL POLICY CONDITIONS APPLYING TO

### SECTION I AND SECTION II [Personal Liability Protection]

 \* \* \* \* \* \*

8. This entire policy shall be void if at any time permission is given by an **insured** for occupancy of the **residence premises** by anyone other than an **insured person** without our written consent.

(All emphasis in original)

The Defendant argues that the failure of Robert to obtain its written consent for Donald and Anita to occupy the Mt. Tabor Road property voids the policy. The Plaintiffs argue that the policy, taken as a whole, is ambiguous and contend that they are included within the definition of "Insured Person" because they are relatives of Robert's and were living in his "household" at the time of the fire.

## III

■ This case is controlled by well-known principles of law. "The interpretation of a written agreement is a matter of law and not of fact. (citation omitted) Therefore, our scope of review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. (citations omitted)". *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn.App.1992). When there is no conflict in the evidence, the issue on appeal becomes a question of law. *Tennessee Farmers Mut. v. American Mut.*, 840 S.W.2d 933, 936 (Tenn.App.1992). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles." *Rainey*, 836 S.W.2d at 118. The court will look to the material contained within the four corners of the instrument to ascertain its meaning as an expression of the parties' intent. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975). The words of the contract should be given their usual, natural and ordinary meaning. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn.App.1986); *Rainey*, 836 S.W.2d at 119. "All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Id.*

■ In determining whether the meaning of a contract is clear or ambiguous, courts apply the following principles. The language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Commrs. v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn.1985). As previously indicated, words must be given their usual and ordinary interpretation. *St. Paul Surplus Lines Ins. Co.*, 725 S.W.2d at 951. The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn.1975). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Id.*

■ Insurance policies are strictly construed in favor of the insured. *Sturgill v. Life Insurance Co. of Georgia*, 465 S.W.2d 742, 744 (Tenn.App.1970). If a contract of insurance is ambiguous and susceptible to two reasonable meanings, "... the one favorable to the insured must be adopted." *Boyd v. Peoples Protective Life Insurance Company*, 345 S.W.2d 869, 872 (Tenn.1961); *Sturgill*, 465 S.W.2d at 744.

In holding for the Plaintiffs, the trial court said in its Memorandum Opinion:

From the entire record, the Court is of the opinion and finds that the policy of insurance in question is ambiguous and must, under applicable law, be strictly construed against the forfeiture urged by Defendant. The contract of insurance ... is, accordingly, construed to provide coverage.

The trial court did not expound on its belief that the insurance policy was ambiguous. The Plaintiffs argue that there are a number of ambiguities, chief among them being that part of the definition of an "Insured Person" which refers to "relatives of [the named insured or his spouse] residing in *your* household." (Emphasis in original). The Plaintiffs argue that Donald, clearly being a relative of Robert's, is an "Insured Person" under the policy and thus entitled to coverage. They contend that "residing in your household" is ambiguous language and subject to a reasonable meaning which would provide coverage to Donald and his wife. Donald con-

tends that "household" can reasonably be interpreted to mean Robert's "house." If this is the case then Donald is covered because he was residing in a "house" titled to Robert at the time of the fire.

The Defendant argues that the policy is not ambiguous. It relies upon Section 8 of the General Policy Conditions which apply to property damage:

This entire policy shall be void if at any time permission is given by an **insured** for occupancy of the **residence premises** by anyone other than an **insured person** without our written consent. (Emphasis in original)

It argues that this language is clear and unambiguous. It takes the position that since Robert did not ask for and obtain its written consent for Donald and his wife to occupy the Mt. Tabor road property, the policy is void. It contends that Donald is not an "Insured Person" because he was not, according to the Defendant, residing in Robert's household at the time of the fire. It argues that "household" as used in the policy is not ambiguous and cannot reasonably be construed to mean Robert's "house." It points out that the policy defines "residence premises" and that the definition clearly would not apply to the Mt. Tabor Road property since the definition specifically refers to the "residence premises" as the place where Robert "reside[s]." He was not residing at the Mt. Tabor Road property at the time of the fire.

The critical determination in this case is whether the language "residing in your household" is ambiguous. If it is, then the Plaintiffs have taken the first step in establishing coverage; but, this "first step" is not enough. The Plaintiffs cannot succeed merely by showing that the language is ambiguous. They must go further and demonstrate that the language is susceptible to a reasonable meaning which would encompass them within the "bosom" of coverage. If Donald was "residing in [Robert's] household," then he is an "Insured Person" and Robert did not need the Defendant's permission for his brother's residence at the Mt. Tabor Road

property because Section 8, previously quoted in this Opinion, does not require the Defendant's permission in order for an "Insured Person" to reside in the insured premises.

■ As a threshold proposition, we examine whether "residing in your household" is ambiguous. In *Boyd v. Peoples Protective Life Insurance Company*, 345 S.W.2d 869 (Tenn.1961), our Supreme Court had to determine if a juvenile who was shot and killed while attempting to escape from a state juvenile detention facility where he had been committed was insured under a life insurance policy issued to the juvenile's father. That policy insured the lives of "Eligible Family Members," a concept which included children "under 19 years of age who live in his household." The Court made an extensive comment about the California case of *Island v. Fireman's Fund Indem. Co.*, 30 Cal.2d 541, 184 P.2d 153 (1947), which involved an automobile insurance policy which contained a provision including the language "member of his household." It is clear that our Supreme Court had the concept of ambiguity in its mind because it pointed out that the California court had commented "that if an insurance contract provision is capable of two meanings the one favorable to the insured must be adopted." *Boyd*, 345 S.W.2d at 872. Immediately following this quote, and without any indication from the Court that it considered "member of his household" to be ambiguous, our Supreme Court said:

The great weight of authority seems to be to the effect that a household means those living together under one roof, under one head and under the common control of one person.

*Id.* In holding that the deceased juvenile was not included among those individuals defined as being "member[s] of his household" and thus not covered under the policy, the Court said:

... if this insurance contract is not reasonably susceptible of any other interpretation

than that it means a child living under the roof with its father, then it is the duty of the Court to say so. This Court is of the opinion that it is not reasonably susceptible of any other interpretation.

*Id.,* at 874.

The rationale of the decision in *Boyd* has been followed in at least two unreported cases of this Court. *Stacie A. James v. Fireman's Fund Insurance Co.,* 13 TAM 20–4 (Tenn.App.W.S.1988) ("resident of the same household" and "resident of your household" language in automobile liability policy); *Permanent General Assurance Corporation v. Trent T. Woods and Travelers Insurance Company,* 18 TAM 23–7 (Tenn.App.W.S. 1993) ("resident in your household" language in automobile policy).

The appellate courts of this state have clearly held that language similar to the "residing in your household" language of the instant policy is susceptible to definition. To the extent that it can be and has been defined by our appellate courts, the language is not ambiguous. In effect, the definition of the language in question, in the absence of a definition in the policy, has been supplied by case law. That has been the case since at least 1961 when *Boyd* was decided.

The Plaintiffs argue that our decision in *State Farm Mut. Auto. Ins. Co. v. Thomas,* 699 S.W.2d 156 (Tenn.App.1983), is to the contrary. That case involved an automobile liability policy provision which defined a relative as "any relative of the named insured who is a resident of the same household." It is true that the *Thomas* case includes a comment by now-Senior Judge Clifford E. Sanders that the subject language "is essentially ambiguous"; but *Thomas* was decided under Virginia law. Furthermore, in *Thomas,* we set forth the factors to be considered in determining whether one was a "resident of the same household":

We think the factors to be considered in a case such as the one at bar were aptly expressed by the Colorado Court of Appeals in *United Services Auto. Asso. v. Mione,* 34 Colo.App. 448, 528 P.2d 420 (1974) where the court said the factors to be considered in determining whether or not a person is a resident of a household include: "(1) the subjective or declared intent of the individual, (2) the relative permanence or transient nature of the person's residence in the household, (3) the relationship between the individual and the members of the household, and (4) the existence of a second place of lodging."

■ Whether one applies the definition of *Boyd,* which we think is controlling here, or the factors of *Thomas,* or a combination of both, it is clear that the language at issue in the instant case—"residing in your household"—as defined by our case law is not ambiguous. Donald and Robert were not "living together under one roof." They were not "under one head." Since neither controlled the other, they were not "under the common control of one person."

■ We do not mean to imply that the words "residing in your household" are always easy to apply to a given set of facts. While we believe they are relatively easy to apply in the instant case, this is not always the situation; but the fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous. In *Thomas,* we were using the term "ambiguous" in the sense that the words there, as here, are sometimes difficult to apply. This distinction was addressed in our unreported case of *Kendall, et al. v. Wilson, et al.,* 13 TAM 2–3 (Tenn.App.W.S.1987), a copy of which was attached to the Plaintiffs' Brief. In that case, we addressed language similar to that in the instant case:

The phrase "member of his household" could in its strictest sense constitute a latent ambiguity. A determination must be made of the meaning of "member" and of "household" as used in this phrase. Latent ambiguity has been defined as:

A latent ambiguity is where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of

extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby then will fairly comport with the ordinary or legal sense of the words and phrases made use of.

*Teague v. Sowder,* 121 Tenn. 132, 148, 114 S.W. 484, 488 (1908).

The distinction between patent ambiguity on the one hand and latent ambiguity on the other has been characterized as "ambiguous terms (of the written instrument)" as opposed to "ambiguous facts." *Union Planters Corp. v. Harwell,* 578 S.W.2d 87, 92 (Tenn.App.1978). In *Harwell,* the indemnity bond in question provided protection for acts of an employee. Since the employee in question was on a leave of absence at the time of the acts complained of, it was necessary to determine if the indemnity bond provided protection, and it was claimed that the ambiguity required a strict construction against the insurance company. In holding that construction of the bond against the insurance company was not called for, Judge Nearn, speaking for the Court, stated:

We have examined the bonds and we find nothing ambiguous about them. The parties hereto confuse ambiguous terms with ambiguous facts. Whether or not Harwell was an employee in the ordinary sense of the word was a matter of fact to be determined by the jury under the facts presented.

*Id.* at 92.

## IV

We conclude that the trial court was in error in finding that the subject policy is ambiguous. We believe that Section 8 of the General Policy Conditions renders the policy void since Donald and his wife were not "residing in [Robert's] household" at the time of the fire and hence were not "Insured Person[s]" as those individuals are defined in the policy. Since they are not "Insured Person[s]," Robert was required to get the insurance company's written permission for their occupancy of the Mt. Tabor Road property. His failure to do so voids the policy and thus there was no coverage under the policy for the losses sustained by the Plaintiffs as a result of the fire.

Since we have found that the policy provision upon which the insurance company relies—Section 8 of the General Policy Conditions—is not ambiguous, we do not address the issue of whether there is a reasonable interpretation of the language, "residing in your household" which would include Donald and his wife within its ambit. Suffice it to say, that the definition of the language in *Boyd* makes it clear that "household" contemplates a relationship and a place and not just a place. Therefore it is immaterial, as far as the subject language is concerned, that Donald and his wife were living in Robert's house. What is important is that they weren't residing in his "household."

Since we have found that the policy was rendered void, it is unnecessary to reach the issue of whether Robert is entitled to recover 65% of his loss under Section 13 of the Conditions Applying to Section I, the property protection section of the policy. The "void" provision of Section 8 of the General Policy Conditions applies to the property protection section of the policy. If the policy is void, and we hold it is, then it is a nullity and void for all purposes. It is as if it had never been issued. Therefore, we need go no further. While this may appear to be a harsh result, it need not have happened. If Robert had obtained the insurance company's permission for Donald's occupancy of the house, the policy would not have been void. It is not for us to re-write a contract to achieve a certain result. Our duty is to enforce the parties' agreement as we find it. That is what we have done in this case.

The Judgment of the trial court is vacated and the Appellees' Complaint is dismissed. Costs on appeal are taxed to the Appellees. This case is remanded for collection of costs

below and for such further proceedings as may be necessary consistent with this Opinion.

FRANKS, J., concurs.

GODDARD, P.J. (E.S.), not participating.

## OPINION ON PETITION FOR REHEARING

The Plaintiffs have filed a Petition for Rehearing. They contend that we committed error in finding that the Defendant was not notified that the brothers Gredig had swapped houses. They contend we could not or should not have made this finding because the trial court made no such finding. They contend that instead of dismissing the Plaintiffs' Complaint, as we did, we should have remanded "for a factual and legal determination as to the question of the Defendant's notice and as to the question of the waiver or estoppel of Defendant thereby."

 The pleadings in this case put at issue the questions of notice, waiver, and estoppel. The parties presented proof on these issues, including a premium notice addressed to Robert Gredig at the address of the house owned by his brother, Donald Gredig. We found, based on the evidence in the record, that Robert Gredig, the policyholder, had not sought the Defendant's permission for his brother and the latter's wife to occupy the insured house. The fact that Robert Gredig told the mortgagee about the house swap and the fact that the premium notice was addressed to Robert Gredig at a place other than the covered residence do not, individually or cumulatively, prove that the Defendant knew that the brothers had swapped houses. Notice to the mortgagee is not notice to the Defendant, and the fact that the premium notice was sent to another address only proves that the Defendant was advised to send the premium notice to another address. This latter fact does not prove that Robert Gredig was not living in the covered house and certainly does not prove that he had swapped houses with his brother. In fact, Robert Gredig testified that he had not advised the Defendant of the swap. No one testified that they had advised the Defendant of the exchange of residences.

The parties had an opportunity to litigate the issues of notice, waiver and estoppel. They litigated these issues. There is no reason to remand this case for a hearing on issues which have already been litigated.

We found that the policy in question was not ambiguous *and* further found, based on the evidence before us, that it was void because there was no proof that the Defendant's permission had been sought with respect to Donald Gredig living in the covered house. By doing so, we addressed the very issues for which the Petition seeks a remand. It is true that the trial court did not reach these issues; but this is immaterial. We did reach these issues. We believe the relief granted by us in this case was appropriate because our findings dispose of all issues raised by the parties and litigated at trial. See Tenn.R.App.P. 13(c) and 36.

It is accordingly ORDERED that the Petition for Rehearing is hereby denied.