IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 30, 2001 Session

# STATE FARM INSURANCE COMPANY v. CHARLES SCHUBERT, ET AL.

**Appeal from the Circuit Court for Anderson County**
**No. 99LA0472      James B. Scott, Judge**

**FILED MAY 31, 2001**

**No. E2000-02054-COA-R3-CV**

State Farm Insurance Company filed a declaratory judgment action seeking a determination as to its liability under the uninsured motorist ("UM") coverage of an automobile insurance policy issued to Charles Schubert. Schubert and his wife had obtained judgments against an uninsured motorist totaling $330,000. Of this amount, Schubert was awarded $260,000 for his injuries. His wife, Clara Schubert, was awarded $70,000 for loss of consortium. At the time of the automobile accident that gave rise to the underlying claims, Schubert was acting within the course and scope of his employment; as a result of his injuries, he received workers' compensation benefits of $89,518.08. We are asked to decide how much of the UM single-person coverage limit of $100,000 is payable in view of the language of the following provision of the policy as it applies to the UM coverages:

> Any loss or expense paid or payable under any worker's
> compensation law...will not be paid again as damages under [the
> uninsured motorist] coverages.

The insured contends that he is entitled to $100,000; State Farm argues that its liability is limited to $10,481.92, being the difference between the UM coverage limit of $100,000 and the amount of the compensation payments. The trial court agreed with State Farm. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Gary L. Adkins and William A. Hotz, Knoxville, Tennessee, for the appellants, Charles Schubert and Clara Schubert.

Robert A. McNees, III, Oak Ridge, Tennessee, for the appellee, State Farm Insurance Company.

# OPINION

## I.

The underlying facts of this case are not in dispute. The trial court correctly stated them as follows:

> On March 5, 1996, an accident occurred in Anderson County, Tennessee, and Mr. Schubert was injured. He was traveling as a passenger in a 1993 Chevrolet Van owned by his employer, Poston and Company, Inc., when a vehicle driven by Charles A. Smith struck the van. Mr. Schubert was employed by Poston and Company, Inc., and was working in the course and scope of his employment. He petitioned the Court for an order approving a Workers' Compensation settlement for the injuries arising out of the accident, and such order was approved and entered on June 19, 1997.
>
> The claim was approved by the Court in the total amount of $89,518.08 and comprised medical bills of $50,195.84, temporary total disability payments in the amount of $8,800.00, and permanent partial disability payments of $30,522.24.
>
> Mr. Schubert and his wife also filed a personal injury complaint...in the Anderson County Circuit court. The action sought recovery for damages arising from the same injuries that were the basis for the Worker's Compensation approved settlement.
>
> The complaint was served on State Farm as the uninsured motorist carrier for the Schuberts, who carried $100,000 of uninsured motorist coverage. State Farm filed a motion and answer while the actual tortfeasor, defendant Charles A. Smith, filed bankruptcy and did not make an appearance in the tort action. State Farm, through Counsel, attended and participated at the trial of the tort action on October 12, 1999. The jury awarded damages for Charles Schubert in the amount of $260,000, and for Clara Schubert in the amount of $70,000. An order was entered on October 25, 1999.
>
> The Schuberts then requested payment of State Farm of the $100,000 uninsured motorist limits set out in the policy and State Farm declined, asserting policy provisions allowing a reduction in an amount equal to that paid in the Workers' Compensation settlement.

II.

In the instant case, State Farm filed an action for declaratory judgment. In its complaint, the insurance company asserted that it is entitled to a set off of $89,518.08 against the UM coverage under its policy with Mr. Schubert. As previously noted, $89,518.08 is the amount of the insured's settlement with the workers' compensation carrier. Thus, State Farm claims that it is only liable under the UM coverage for $10,481.92, being the difference between its single-person UM limit of $100,000 and the amount of the compensation settlement of $89,518.08. Schubert takes a different view. He contends that the insurance company is obligated for the full coverage limit of $100,000.

The trial court agreed with State Farm, and found "that the UM coverage of $100,000 applies, but should be reduced by the $89,518.08 paid to Mr. Schubert in workers' compensation benefits, resulting in payment by State Farm of $10,481.92, the difference between the two amounts." Schubert now appeals.

III.

State Farm relies upon our unreported decision in the case of *Sims v. Stewart*, C/A No. W1998-00560-COA-R3-CV, 1999 WL 1336056 (Tenn. Ct. App. W.S., filed December 15, 1999), *perm. app. denied* June 19, 2000. *Sims* was the culmination of litigation that had previously resulted in an appeal to this Court.[1] The precise issue in the second *Sims* appeal, which is the same issue now before us, was not directly involved in the first appeal of *Sims*.

*Sims* deals with the following UM provision:

> Our limit of liability for this Uninsured Motorist Coverage shall be reduced by the sum of the limits payable under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the covered person.
>
> Damages payable under this coverage to or for a covered person shall be reduced by:
>
> 1. the amount paid under the Liability and Medical Payments Coverages of this policy or any other automobile insurance policy;
>
> 2. the amount paid or payable under any workers' compensation law, disability benefits law or any similar law;

---

[1] *See **Sims v. Stewart**, 973 S.W.2d 597 (Tenn. Ct. App. 1998)

-3-

3.  a payment made by or on behalf of the owner or operator of the uninsured motor vehicle, or by or on behalf of the person or entity who may be legally liable.

*Id*. at \*3.  In *Sims*, we were called upon to determine whether, under the quoted policy language, the insurance company was entitled to reduce its uninsured motorist payment to its insured by the amount paid to him pursuant to the Workers' Compensation Law.  The trial court in *Sims* had held that the insured's damages were $198,046.43.  The trial court then subtracted from the damages the compensation benefits paid to the insured – being $61,862.57 – leaving a balance of $136,183.86.  Since this amount was more than the coverage of $100,000, the trial court reasoned that the insured was entitled to the full $100,000.

On appeal by the insurance company in *Sims*, we reversed.  We relied upon language in the case of *Hudson v. Hudson Mun. Contractor*, 898 S.W.2d 187 (Tenn. 1995).  *See Sims*, 1999 WL 1336056 at \*3.  While the precise issued presented in *Sims* was not before the Supreme Court in *Hudson*,[2] we nevertheless found *Hudson* to be instructive.  The pertinent policy language in *Hudson* was as follows:

Regardless of the number of insureds under this policy, the company's liability is limited as follows:

(a) …

(b) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by…the amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law.

*Hudson*, 898 S.W.2d at 188.

In resolving the issue before it, the Supreme Court in *Hudson* reviewed the cases of *Terry v. Aetna Casualty and Surety Co.*, 510 S.W.2d 509 (Tenn. 1974) and *Dwight v. Tennessee Farmers*

_____

[2]The issue in *Hudson* was whether the workers' compensation carrier was entitled to an award against the proceeds of a settlement between the insured's personal representative and the UM carrier.  *See Hudson*, 898 S.W.2d at 188.  The Supreme Court held that the workers' compensation carrier was not entitled to such an award.  *See id*. at 190.

-4-

***Mutual Insurance Co.***, 701 S.W.2d 621 (Tenn. Ct. App. 1985). The Supreme Court held in ***Hudson*** that ***Terry*** and ***Dwight*** stood for the proposition "that an insured party's *right to recover* under an uninsured motorist policy that contains a *setoff provision such as the one involved in this case* may be reduced by the amount that the insured has collected, or could collect, under the Workers' Compensation Law." ***Id***. at 189 (emphasis added). In ***Sims***, we viewed this language from ***Hudson*** as standing for the proposition that the setoff is to be made against the insured's "right to recover." *See* ***Sims***, 1999 WL 1336056 at *4. In construing "right to recover," we stated that

> [i]t is our opinion that the "right to recover" referred to by the Supreme Court in ***Hudson*** is based upon the policy language which declares that the insurance company will pay to the insured such sums as the insured is legally entitled to recover from the uninsured motorist. Considering this policy provision together with the policy provision that "damages payable under this coverage…shall be reduced" causes us to conclude that "damages payable under this coverage" is limited to the maximum of $100,000.00. Thus,…recovery in the instant case, or the "right to recovery," as referred to by the Supreme Court in ***Hudson***, is $100,000.00, less the workers compensation benefits paid.

***Id***.

## IV.

Our interpretation of the contract language before us is governed by well-established principles. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." ***Blaylock and Brown Constr., Inc. v. AIU Ins. Co.***, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). In interpreting insurance policies, words are to be given their common and ordinary meaning. ***Tata v. Nichols***, 848 S.W.2d 649, 650 (Tenn. 1993). Language in an insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation. ***Id***. If a provision is ambiguous and susceptible to two reasonable meanings, we must adopt the meaning favorable to the insured. ***Gredig v. Tennessee Farmers Mut. Ins. Co.***, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

"The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law." ***NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.***, 968 S.W.2d 791, 795-96 (Tenn. Ct. App. 1997).

## V.

The instant case turns on our interpretation of the meaning of the following provision in Schubert's policy:

> Any loss or expense paid or payable under any worker's compensation law, disability benefits law or any similar law will not be paid for again as damages under these coverages.

"[T]hese coverages," as those words are used in this provision, refer to the UM coverages. The policy provision under discussion brings into play the following section of the Tennessee Workers' Compensation Law, which stipulates that UM coverage

> may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits.

T.C.A. § 56-7-1205 (2000). The Supreme Court has held that "'[o]ther benefits' limiting coverage may include workers' compensation benefits." ***Hudson,*** 898 S.W.2d at 188.

It is logical to assume that by inserting this provision in the Schubert policy, State Farm intended to take advantage of the statutory authority permitting it to avoid duplication of "other benefits," *i.e.*, in this case, workers' compensation benefits. It remains to be seen whether the wording selected by State Farm accomplished this objective; and, even if it did, how that wording impacts our decision in this case. Schubert argues that the policy language under discussion does not mandate the conclusion that the compensation benefits are to be offset against and, hence, deducted from, the UM coverage of $100,000. As an alternative argument, Schubert contends that the provision is, at a minimum, ambiguous and therefore must be construed in his favor. To do so, he argues, is to validate his position that he is due the full $100,000 of UM coverage. State Farm argues, on the other hand, that the subject provision, when viewed in light of the holdings in ***Sims*** and ***Hudson***, requires a finding that the compensation benefits must be offset, dollar for dollar, against the coverage limit of $100,000.

VI.

Our review in this case leads us to reach two firm conclusions: first, the policy language in the instant case is different from the offset language found in ***Sims*** and ***Hudson***; and, second, the language placed in the Schubert policy by State Farm does not mean that the UM coverage of $100,000 must be reduced by the workers' compensation benefits in the instant case.

Eliminating irrelevant language, we focus on the following words in the Schubert policy:

> Any loss or expense paid or payable under any worker's compensation law...will not be paid for again as damages under these coverages.

The crucial question in the instant case is whether this language is subject to the same interpretation attributed to the language in *Sims*.  For the purpose of comparison, we again state the critical language in *Sims*:

> Damages payable under this coverage...shall be *reduced* by...the amount paid or payable under any workers' compensation law.

(Emphasis added).  For further comparison, we cite the relevant language in *Hudson*, the case relied upon by us in reaching our decision in *Sims*:

> Any amount payable under...this insurance...shall be *reduced* by...the amount paid...under any workers' compensation law....

(Emphasis added).

The contract language at issue in *Sims*, as well as that before the Supreme Court in *Hudson*, has a clear meaning: the amount that an insured would otherwise be entitled to recover under the UM coverage of the policy will be "reduced" by any workers' compensation benefits.  In our judgment, this is *not* the meaning of the relevant provision in the instant case.  Simply stated, the provision now before us has no such "reduc[tion]" language.  The language before us says – and it says it very clearly – that State Farm will not "again" pay for losses or expenses payable "under any workers' compensation law."  Assuming, as we must, that the compensation benefits paid to Schubert are related to a portion of the losses and expenses underpinning the judgment against the tortfeasor, there is still some $170,481.92 of the judgment to which the compensation benefits are clearly not related.  That being the case, there is no logical reason to conclude that a payment by State Farm of $100,000 would have the effect of paying the compensation benefits "again."  There is plenty left of the judgment to which the $100,000 payment can relate without it being viewed as a duplication of the compensation benefits.

The UM language in *Sims*, as well as that in *Hudson*, states, in effect, that the insurance company's liability will be reduced by the amount of the workers' compensation benefits payable to the insured.  Those provisions clearly state how the insurer's liability is to be *calculated*.  The policy language now before us does not focus on a *calculation*; rather, it focuses on what the insurance company *will not pay*.  It simply says that if its insured is entitled to recover compensation benefits, it, the insurance company, will not pay those benefits "again."  The *Sims* and *Hudson* provisions basically say "we will pay our coverage less the workers' compensation benefits" while the policy before us essentially says "we will not allow you to recover from us any loss paid for by workers' compensation."  In our view, there is a huge difference in the import of the language now before us and that before the courts in *Sims* and *Hudson*.  That difference is of sufficient magnitude to render the holdings of *Sims* and *Hudson* inapplicable to the facts of the instant case.  Our holding today commits State Farm to its coverage liability of $100,000 while, at the same time, steering clear of violating the bargain between State Farm and its policyholder that State Farm would not "again" pay the benefits payable under workers' compensation.

While we find no ambiguity in the policy language under consideration, we note the well-established principle that if a provision in an insurance policy is ambiguous and susceptible to more than one reasonable meaning, we must adopt the meaning favorable to the insured. *Gredig*, 891 S.W.2d at 912. Thus, even if there is some ambiguity in the UM coverage found in Schubert's policy, we must accept the meaning favorable to him. While State Farm may have meant to say what the policies in *Sims* and *Hudson* clearly say, it failed to do so. As the author of the policy, it must suffer the consequences of this failure. Under the language used by it, it is responsible to Schubert for $100,000.

VII.

The judgment of the trial court is reversed. The case is remanded for entry of an order consistent with this opinion. Costs on appeal are taxed to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE