GREAT SOUTHERN HOMES, INC.

v.

EATON'S CREEK PARK REAL
ESTATE INVESTORS FUND,
LLC, et al.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 12, 2006 Session.

May 16, 2006.

Permission to Appeal Denied by
Supreme Court Oct. 2, 2006.

W. Gary Blackburn and Michael D.
Hornback, Nashville, Tennessee, for the
appellant, Great Southern Homes, Inc.

James W. Fisher, Goodlettsville, Ten-
nessee, for the appellee, Eaton's Creek
Park Real Estate Investors Fund, LLC, et
al.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Great Southern Homes, Inc., a home builder, appeals the summary dismissal of its complaint for breach of contract. Plaintiff sued the developer of the Eaton's Creek Park Subdivision contending the developer breached the parties' contract by failing to honor Plaintiff's preferential option to purchase lots in the second phase of the development and by failing to develop the lots in a timely manner. The trial court summarily dismissed the complaint, finding no material facts were in dispute, and the contract did not support Plaintiff's claims. We affirm.

Eaton's Creek Park Real Estate Investors Fund, LLC, Defendant, was the developer of a planned urban development, Eaton's Creek Park Subdivision.[1] The subdivision was to include 324 building lots, which were to be developed in eleven phases over a period of years. Plaintiff, Great Southern Homes, Inc., is a home builder.

On June 12, 2001, Plaintiff entered into a "Contract for Sale and Option of Real Estate" with Defendant. Pursuant to the contract, Defendant agreed to sell twenty-four residential lots in Phase One to Plaintiff, and granted Plaintiff the option to purchase additional lots in subsequent phases. The option, which afforded Plaintiff the right to purchase at least half of the lots in subsequent phases, was conditioned, in part, on the performance by Plaintiff and others in Phase One.

Although Plaintiff did not purchase twenty-four lots in Phase One, as it was contractually entitled to do, it purchased the majority of the lots sold in Phase One. Moreover, only two other builders purchased lots in Phase One prior to lots in Phase Two being offered for sale by Defendant.[2]

When construction of the second phase began in the winter of 2001, Plaintiff and Defendant participated in discussions concerning lots Plaintiff might purchase. The contract afforded Plaintiff the option to purchase at least one-half of the lots in the second phase. The contract additionally provided that the allocation of lots in the second phase would be based on purchase performances in Phase One. Although Plaintiff and Defendant discussed Plaintiff's desire to acquire certain lots in the second phase, no agreement was reached as to the number of lots or which lots in Phase Two Plaintiff would purchase.

Unknown to Plaintiff, Defendant allocated lots in Phase Two to another home builder, Fox Ridge Homes. Two of the lots allocated to Fox Ridge were lots Plaintiff requested, lots 25 and 49. Once Plaintiff learned of the allocation of lots to Fox Ridge, Plaintiff insisted that Defendant not sell the lots to Fox Ridge, advising that it desired to purchase the disputed lots and that its option to purchase lots in Phase Two was superior to Fox Ridge. Plaintiff also advised Defendant it had prospective buyers ready to close, but if the lots were allocated to Fox Ridge, it would lose the sales. Defendant allocated to Plaintiff the number of lots in Phase Two Plaintiff desired, as the contract expressly required; however, it did not modify its decision to

---

1. It was also known as Creekside Trails.

2. Three of the twenty-five lots in Phase One were purchased by Shelby Smith, who was the Secretary of Eaton's Creek Park Real Estate Investors Fund, L.L.C., and three were

purchased by Robert Perry. Fox Ridge Homes purchased lots in Phase One but not until the lots in Phase Two were offered for sale by Defendant.

sell lots 25 and 49 to Fox Ridge. This action followed.[3]

Plaintiff contends Defendant breached the contract by not allocating the requested lots to Plaintiff and for not substantially completing the preparation of lots in the second phase in a timely manner.[4] In its Answer to the Complaint, Defendant denied any breach of contract. Further, Defendant admitted Plaintiff had the right to acquire one-half of the lots, and perhaps more, in Phase Two; however, it contended Plaintiff had no right to direct the allocation of lots.

Following discovery, Defendant filed a Motion for Summary Judgment, contending it was not in breach of contract. The trial court agreed and summarily dismissed the Complaint from which order Plaintiff appeals.

Plaintiff raises four issues on appeal. We find two of the issues are dispositive. One is whether the trial court erred in granting summary judgment as to the claim that Plaintiff sustained a compensable breach because Defendant failed to achieve timely substantial completion. The other is whether the trial court erred in summarily dismissing the claim of breach relative to the allocation of lots.

## STANDARD OF REVIEW

■ The issues were resolved in the trial court upon summary judgment. Summary judgment does not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn.2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn.2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn.Ct.App. 1998).

■ Summary judgment is proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall,* 847 S.W.2d at 210; *Pendleton v. Mills,* 73 S.W.3d 115, 121 (Tenn.Ct.App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist, and that party is entitled to judgment as a matter of law. *Godfrey v. Ruiz,* 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn

3. Fox Ridge, Thornton and Associates, and Jeffrey K. Kimbro were also named as defendants. These defendants, however, were dismissed, leaving Eaton's Creek as the only defendant.

4. Plaintiff's Complaint also asserted claims for negligent misrepresentation and violations of the Tennessee Consumer Protection Act. Plaintiff's brief, however, did not challenge the trial court's dismissal of these claims.

Because Plaintiff did not raise the issues of negligent misrepresentation or Tennessee Consumer Protection Act violations, we treat them as waived. Plaintiff also asserted claims for inducement to breach a contract and tortious interference with a business relationship against defendants other than Eaton's Creek that have since been dismissed from this cause of action.

from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn.2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82–83 (Tenn.Ct. App.2000).

### Substantial Completion

■ Plaintiff contends Defendant was under a contractual duty to substantially complete the development of the lots in a timely manner, that it breached that duty, and Plaintiff sustained compensable injuries as a result. Defendant contends the contract does not impose a specific time limit for completion, and the contract afforded Plaintiff a remedy in the event of a delay in substantial completion. We have concluded the contract supports Defendant's contention and the trial court's ruling.

■ The parties agree the relevant language in the contract is unambiguous. They, however, disagree as to its interpretation. Issues as to interpretation and application of unambiguous contracts are issues of law, the determination of which enjoys no presumption of correctness on de novo appellate review. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn.2001). In interpreting a contract, we must ascertain the intention of the parties and give effect to that intention consistent with legal principles. *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn.Ct. App.1994) (citing *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn.Ct.App.1992)). The words of the contract should be given their usual and ordinary meaning. *Gredig*, 891 S.W.2d at 912 (citing *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn.Ct.App.1986)).

The contract does not specify a date of completion or a specific schedule by which phases or lots shall be completed. It does, however, contain a provision that time is of the essence, and in Section 2.04 it imposes a duty upon Defendant to "cause" substantial completion, in phases. In pertinent part, the contract states:

> [Defendant] hereby covenants and agrees to cause the **"Substantial Completion"** of the Property, by Phase, which, for purposes hereof, shall mean the date that each of the following, with respect to each of the lots in any given Phase, has been installed, completed and paid for in accordance with all applicable laws, codes and ordinances, and [Plaintiff] given written notice of the same prior to the Initial Closing, and any Subsequent Closing which is the first Closing in any given Phase. . . . .

"Substantial completion" is a defined term in the contract. Pursuant to the contract, substantial completion occurs once utilities and storm drainage systems are installed and functioning, the property is accessible by dedicated public streets, iron property pins are placed in the corners of the lots, the Federal Housing Administration approved the subdivision, the

property was cleared of all trash and debris, the final plat was recorded, and a performance bond was posted.[5]

The contract does not express time in terms of a deadline or a time limitation. Rather it is open-ended. The contractual provisions for "substantial completion" do not impose a deadline for substantial completion; instead, the contract identifies when substantial completion has occurred. Moreover, instead of a deadline by which the work shall be completed, and instead of Defendant being in default for failing to meet a deadline, the contract provides remedies in lieu of default.

> It is understood and agreed that the timely production of fully developed residential building lots in the Subdivision is the exclusive responsibility of the [Defendant]. In the event that [Defendant] experiences delays in the development of the Subdivision *for whatever reason*, and is unable to accomplish Substantial Completion of Subdivision lots by Phase in a timely enough manner to meet [Plaintiff's] purchase obligations hereunder or [Plaintiff's] demand for Accerated [sic] Purchases, then the Purchase Guidelines described in Paragraph 1.05 hereof shall be extended by such time as may be needed by [Defendant] to accomplish Substantial Completion, in which event [Plaintiff] shall not be in Default hereunder nor further obligated to Close lots in accordance with the Purchase Guidelines. (emphasis added)

The contract is unambiguous and expressly states the parties' agreement to adopt a flexible schedule in the event of delays "for whatever reason." Of further significance, the parties agreed that Plaintiff would be afforded an extension, in the event of delays for whatever reason, by "such time as may be needed." Defendant afforded Plaintiff the additional time needed. Accordingly, we affirm the summary dismissal of this claim.

## THE OPTION

■ Plaintiff contends Defendant improperly allocated lots and favored another home builder in violation of the contract. Defendant insists it had the unilateral right to decide on the allocation of lots, and that it satisfied its contractual obligation by affording Plaintiff the option to purchase the number of lots Plaintiff desired to purchase in Phase Two.

The trial court set forth several findings. The findings most relevant to this issue are:

> The Plaintiff has failed to raise a genuine dispute of material fact as to the following items, which are ... in support of Defendant's Motion for Summary Judgment:
>
> . . . .
>
> 7. The [contract] does not grant [Plaintiff] any right to determine allocation of lots in the subdivision.
>
> . . . .
>
> 10. The [contract] states that allocation of available lots shall be at the Defendants' discretion.

The contract provided:

> [Defendant] hereby grants to [Plaintiff] the right and option ("**Option**") to purchase at least one-half of additional lots in each subsequent Phase of the Subdivision ("**Additional Lots**").... The specific lots in each Phase of the subdivision shall be allocated amongst all builders building in the Subdivision based upon

---

**5.** There was one additional requirement for Phase Two, which was the completion of the entry monument for the subdivision.

their purchase performance in the prior Phase.

The above is the only provision in the contract that speaks to Plaintiff's option to acquire lots in subsequent phases. The contract does not expressly or impliedly afford Plaintiff the right to designate or select the lots it will purchase. It affords Plaintiff the option to purchase "at least one-half" of additional lots in each subsequent phase and possibly more based on its prior performance. The contract, however, does not afford Plaintiff the right to specify which lots it may purchase, or stated another way, which lots shall be allocated to Plaintiff. Further, the contract does not prevent Defendant from selling lots to another builder, including one that did not purchase lots in a prior phase, subject to Plaintiff's option to purchase lots based upon prior performance. Significantly, Plaintiff has not complained that Defendant refused to sell Plaintiff a sufficient number of lots in Phase Two. The dispute does not pertain to the quantity of lots Plaintiff may purchase. Instead, it pertains to the determination (allocation) of the specific lots Plaintiff may purchase.

Plaintiff's option to purchase lots in Phase Two was an entitlement to purchase a quantity of lots, at least one-half of the lots and perhaps more based upon prior performances; however, that option did not include the right to identify the lots Plaintiff or another builder could purchase. We find this provision unambiguous. Further, the contract provides, "[t]his Contract and the Exhibits attached hereto embody the entire agreement and understanding between the parties and may not be modified or amended except by written instrument...."

The parties limited their obligations to those expressed in the contract. We are not at liberty to impose contractual liabilities not expressly assumed by the parties. *Cummings v. Vaughn*, 911 S.W.2d, 739, 742 (Tenn.Ct.App.1995). Based upon our interpretation of the unambiguous language in the contract, Plaintiff had no contractual right to select or direct the allocation of the lots it could purchase in Phase Two.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Appellant, Great Southern Homes, Inc.