IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 9, 2010 Session

# REBECCA LYNN WEINGART  v.  JONATHAN SHANE FORESTER

**Appeal from the Chancery Court for Washington County**
**No. 37315      G. Richard Johnson, Chancellor**

---

**No. E2010-00895-COA-R3-CV - Filed April 11, 2011**

---

This appeal arises from an entry of divorce. The parties executed a prenuptial agreement prior to their marriage. The prenuptial agreement outlined the classification of separate property and the parties' respective rights in the event of divorce. After nearly seven years of marriage, the wife filed a petition for divorce. The parties participated in mediation, and a hearing was held to resolve the remaining issues. At the hearing, counsel for both parties presented arguments regarding the unresolved issues and eventually reached an agreement to settle those issues during a recess of the hearing. Counsel for the parties announced the agreement before the trial court, and the trial court subsequently entered an order. The husband appeals and challenges the trial court's finding that the wife's retirement account is entirely her separate property. After reviewing the record, we find that the trial court erred in finding that the prenuptial agreement was ambiguous. Nevertheless, the trial court properly awarded the wife's retirement account to her as separate property. Therefore, we reverse in part and affirm in part.

**Tenn. R. App. P. 3; Judgment of the Chancery Court**
**Affirmed in Part and Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Gregory W. Francisco, Kingsport, Tennessee, for the appellant, Jonathan S. Forester.

Judith Fain, Johnson City, Tennessee, for the appellee, Rebecca L. Weingart

**OPINION**

## I.  FACTUAL BACKGROUND

Jonathan S. Forester ("Husband") and Rebecca L. Weingart ("Wife") wed in 2002. A few days prior to the marriage, the parties executed a prenuptial agreement ("Prenuptial Agreement" or "Agreement"). After nearly seven years of marriage, Wife filed a petition for divorce in April 2009 along with a proposed parenting plan for the couple's one child.

In the Prenuptial Agreement, the parties disclosed their respective assets and liabilities. The Agreement also outlined the division of property in the event that the marriage ended. Namely, the Agreement provided that each party would retain his or her own separate property including retirement accounts.

After participating in mediation, unresolved issues remained between the parties. A hearing occurred on March 2, 2010. The parties appeared at the hearing with an agreed parenting plan and a proposed division of personal property. No witnesses presented testimony at the hearing; the hearing primarily consisted of argument from the parties' attorneys. Most of the debate centered on the definition of separate property within the Prenuptial Agreement. Husband's counsel argued that Wife's employment income constituted marital property because certain provisions of the Prenuptial Agreement were ambiguous. Husband urged the equitable division of Wife's contributions from her employment income to her retirement account. While agreeing with Husband that the provision was ambiguous, the trial court found:

> [T]hat the provision in the prenupt on Page 4, Section 5, applying the Rules of contract construction, and in particular giving words for ordinary, usual meaning, the Court finds that income from a job is not included in number 5. It's ambiguous and I cannot get employment income anywhere from any of the wording in Item 5, Page 4. Now, having said that, it appears to me that on Page 11, Item 23 is very clear, very clear, irrespective of how income is defined. Each get their own retirements, period.

After the attorneys proceeded to raise additional issues and arguments, the trial court took a recess and ordered the attorneys to organize the remaining issues. Following the recess, the attorneys returned to court with an agreement. The following exchange occurred:

> Ms. Fain [Wife's counsel]: You don't really need to if your Honor, please. I'm trying to help you, okay. Your Honor, we have an announcement to make to the Court. We would like that prenup that, perhaps the one that I sent to you be made an Exhibit in this trial and not just a filing with the Court. We have agreed, my understanding, and I'll just reiterate from earlier today when you declared – we stipulated to declare the parties to be divorced, used the property list that the Plaintiff [Wife] filed, plus the one page of amendments provided

to the Court as an Exhibit to divide the personal property between the parties. Adopt the final Parenting Plan. Each party's retirement is their own separate property. That there is to be no further encumbrance on the real estate in which Mr. Forester or his mother are residing until that property is sold. Dr. Weingart's property is real estate that's titled solely in her name, is her separate property as well as the appreciation. And that's where we left off this morning. Is that a correct statement, Mr. . . . .

Mr. East [Husband's counsel]: That's correct, your Honor.

The trial court subsequently entered an order reflecting the agreement announced in court by the parties.

Thereafter, Husband filed a notice of appeal challenging the trial court's classification of Wife's retirement account as separate property. Husband contends that the retirement account is subject to equitable division because the trial court held that Wife's employment income constituted marital property and she contributed her income into the retirement account.

## II. ISSUES

Husband raises the following issue:

1. Whether the trial court erred in holding that Wife's retirement account was entirely separate property pursuant to the Prenuptial Agreement, when substantial sums of income earned during the marriage, which the court determined was marital property, had been contributed to such plan.

Wife raises additional issues, which we restate:

2. Whether the trial court erred in holding that the Prenuptial Agreement was ambiguous.

3. Whether Husband's appeal constitutes a frivolous appeal.

## III. STANDARD OF REVIEW

On appeal, we review the decision of a trial court sitting without a jury de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v.*

*Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. DISCUSSION

### A. Prenuptial Agreement

Our resolution of the issues raised in this appeal involves the trial court's interpretation of the Prenuptial Agreement. The interpretation of written agreements is a matter of law, which this court reviews de novo without a presumption of correctness. *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). When interpreting prenuptial agreements, we employ the same principles of construction that are applicable to other written contracts.[1] *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996).

The cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the intention of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In attempting to ascertain the intent of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *See Wilson*, 929 S.W.2d at 373. The court's initial task in construing the contract is to determine whether the language is ambiguous. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). Where the language of a contract is clear and unambiguous, its literal meaning controls the outcome of the dispute. *Planters Gin Co.*, 78 S.W.3d at 890. On the other hand, a contract is ambiguous if its meaning is uncertain and is susceptible to more than one reasonable interpretation. *See Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). "When a contract term is ambiguous there was no meeting of the minds." *Inscoe v. Kemper*, No. M1999-00741-COA-R3-CV, 2000 WL 1657844, at *3 (Tenn. Ct. App. W.S., Nov. 6, 2000).

Sections Four and Five of the Prenuptial Agreement are relevant to our discussion. Those provisions provide, in pertinent part:

4. **Separate Property of the Parties.** The parties hereto agree that each party shall retain, free from any and all claims whatsoever kind or nature of the other party, as his/her separate estate, the following property, hereinafter collectively

---

[1]Tennessee public policy favors prenuptial agreements. *Perkinson v. Perkinson*, 802 S.W.2d 600, 601 (Tenn. 1990). Parties benefit from prenuptial agreements because such agreements define their marital rights in property. *See Sanders v. Sanders*, 288 S.W.2d 473, 477 (Tenn. Ct. App. 1955).

referred to as "Separate Property":

(a) Any and all property, whether real, personal, or mixed, acquired by such party hereto by purchase, exchange, gift, bequest, devise or descent and/or with his or her Separate Property, as defined by this paragraph 5 of this Agreement; and

(b) In addition and not in limitation of the terms of paragraph (a), all property set forth on Exhibit "A" attached hereto shall be the Separate Property of Weingart and all property set forth on Exhibit "B", attached hereto, shall be the Separate Property of Forester; and,

(c) In addition and not in limitation of the terms of paragraphs (a) and (b), any and all appreciation in the value of Separate Property of such party as set forth on the respective exhibits attached hereto and as defined in this paragraph 4, whether by reason of interest earned on such Property, whether passive or otherwise, appreciation of the value of such Separate Property for whatever reason, and/or the sale of exchange or substitution of any kind/or all items of Separate Property.

(e.g. Any and all appreciation in the value of Weingart's Separate Property set forth on Exhibit "A", including but not limited to, income from such Separate Property, and any Separate Property defined in paragraph (a) above shall be and remain the sole and absolute property of Weingart.)

5. **After Acquired Property**. The parties agree that during the period subsequent to the date of their marriage, all property, whether real, personal or mixed, acquired by them, shall be the Separate Property as defined in paragraph 4 hereof, of the party who received by gift, bequest, devise or descent such property and/or whose Separate Property was used to purchase or acquire such property, and/or whose labor or services resulted in the funds for the payment for, or acquisition of, such real, personal or mixed property, unless otherwise agreed to in writing by and between the parties. Notwithstanding any legal presumptions to the contrary, only property acquired and titled, in writing, whether or not required by applicable law, in the joint names of the parties as Tenants by the Entireties shall be defined as "After Acquired Property.". . . .

Section 23 of the Prenuptial Agreement also sets out that Husband waives his interest in Wife's retirement accounts by relinquishing "any and all interest which he may now or

hereafter have or accrue in and to Weingart's Basic Benefit Plan and/or Thrift Savings Plan. . . ."

In interpreting the above provisions, the trial court found that "'income' was not covered by the [P]renuptial [A]greement but that it was very clear that both parties were to retain her and his separate retirement benefits as their separate property under that agreement. . . ."

Husband takes issue with the trial court's determination that under the Prenuptial Agreement, Wife was permitted to funnel her employment income into her retirement account thereby creating separate property that would otherwise constitute marital property. He points out that the trial court found that Section Five of the Prenuptial Agreement was ambiguous and did not include employment income within the definition of "Separate Property." Thus, Husband contends that Wife's income contributions to her retirement account are marital property subject to equitable division.

Wife counters that the trial court erred in finding that Section Five was ambiguous.[2] She argues that a straightforward reading of Sections Four and Five establishes that all property acquired after the marriage was to remain separate property unless the property was jointly titled in both parties' names. Wife cites this court's decision in *Reed v. Reed*, No. M2003-02428-COA-R3-CV, 2004 WL 3044904, at *5 (Tenn. Ct. App. M.S., Dec. 30, 2004) in support of her argument. In *Reed*, the court addressed a similar dispute regarding a prenuptial agreement and the classification of separate property. *Id.* As in this case, the Prenuptial Agreement failed to include a definition for the term "property", and the *Reed* court observed that the plain meaning of the term "property" would apply.[3] *Id.*, n.1 (citing *Planters Gin Co.*, 78 S.W.3d at 889-90).

After reading the Prenuptial Agreement and reviewing the record, we find that the Agreement's language is clear and unambiguous. The Agreement outlines that the parties intended to maintain their own separate property throughout the marriage unless they agreed

---

[2]In her brief, Wife argues that Husband's appeal is an attempt to repudiate the parties' agreement that was announced in open court. After reviewing the record, it appears that Husband's appeal concerns the legal import of the trial court's finding that a provision of the Prenuptial Agreement was ambiguous rather than a repudiation of the agreement that the parties' respective retirement accounts are separate property.

[3]Black's Law Dictionary defines "property" as "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised." Black's Law Dictionary 1017 (8th ed. 2005). Applying the plain and ordinary meaning of the term, we conclude that the parties intended that "all property" to encompass property of any sort, including earnings from employment, retirement or elsewhere. *See Reed*, 2004 WL 3044904, at *5, n. 1.

to specifically designate property as "After Acquired Property" or marital property in writing. We further find that Wife's income is included in the definition of "Separate Property." Exhibit "A" that was attached to the Prenuptial Agreement lists Wife's income as her separate property. Under the provisions of the Agreement, Wife would maintain her separate property throughout the duration of the marriage including her employment income. The trial court erred in finding that Wife's income was not covered by the Agreement and deeming it ambiguous. Therefore, we reverse the trial court's finding in that regard. Nevertheless, in spite of finding the Agreement to be ambiguous, the trial court properly awarded Wife's retirement accounts to her. As the trial court noted, the Agreement provides that the parties would retain their respective retirement accounts. Husband's contentions that Wife's contributions to her retirement account constitute martial property cannot prevail over a straightforward reading of the Prenuptial Agreement. Accordingly, we affirm the trial court's award of Wife's retirement accounts as her separate property.

## B. Frivolous Appeal

Wife requests this court to find Husband's appeal frivolous and award damages in the form of attorney's fees. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Industrial Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). We do not find Husband's appeal devoid of merit, and therefore, deny the request.

## V. CONCLUSION

The trial court's order is reversed in part and affirmed in part. Costs of this appeal are taxed to the appellant, Jonathan S. Forester. This cause is remanded, pursuant to applicable law, for the collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE