### IN THE

# SUPREME COURT OF TENNESSEE,

### FOR THE

# WESTERN DIVISION,

JACKSON, . . . . . . . . . . . . . APRIL TERM, 1885.

---

E. M. HAYES *et al. v.* D. L. FERGUSON *et al.*

1. LEASE. *Covenants.* A covenant for quiet possession is not broken until eviction, actual or constructive.

2. SAME. *Constructive Eviction. Rescission.* Where, under the same instrument, two distinct tracts of land, a large and a small tract, were leased for a series of years at a rental of so much per acre of tillable land a year, the lessors covenanting for quiet possession, the smaller tract being in litigation, which fact the lessees knew, and during the time the lessors lost the suit, whereupon the lessees abandoned the lands, and notified the lessors that they had rescinded the contract, contrary to the wish of the lessors, who stated to the lessees that they should be protected in their possession : *Held,* 1. That the losing of said suit did not constitute a constructive eviction. And 2. That an actual eviction of the smaller place would not have warranted a rescission of the contract, but an abatement of the rent.

3. SAME. *Fire Insurance.* During a lease of real estate, providing that if the buildings, or any of them, be destroyed by fire, the lessees "are to erect at their own expense such buildings as will answer their purpose," fire insurance policies on the gin house, etc., were issued to the lessors, but made payable to the lessees, who paid the premiums, and the insured property was destroyed by fire during the

time, when the lessees collected the money on same, but declined to apply it to rebuilding the property destroyed by fire: *Held,* 1. That the lessors were entitled to recover of the lessees the amount collected by them on the policies, and that such provision in a policy of insurance merely designates the person to whom the loss is to be paid, and shows that he is a person who *may have* an interest in its being so paid, and that such stipulation has no more effect upon the contract of insurance than a stipulation that the loss, if any, should be deposited in a specific bank to the credit of the party insured. 2. That the lessees were not entitled out of the proceeds of the policies of insurance to the loss of the use of the gin, etc., for the balance of the term after the destruction of the property by fire.

4. SAME. *Abandonment. Receiver. Compensation.* After the abandonment of the lands by the lessees the lessors sued the lessees and applied for a receiver to rent out the lands, and by consent of the parties a receiver was appointed: *Held,* the lessees should pay the compensation of the receiver.

4. SAME. *Surveyor. Compensation.* In order to find out the amount of tillable land rented, a surveyor was employed to ascertain same: *Held,* the lessors should pay the surveyor's fees.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

WRIGHT & FOLKES for complainants.

A. P. LILES, HUMES & POSTON and HARRIS & TURLEY for defendants.

WILSON, Sp. J., delivered the opinion of the court.

On January 2, 1878, A. J. Hayes, and his wife, complainant E. M. Hayes, leased for five years to D. L. Ferguson and H. C. Hampson certain lands in Mississippi county, Arkansas, at a specified annual rental, payable on or before the 15th day of Novem-

ber, each year, during the continuance of the lease. The leased lands belonged equally as tenants-in-common to Mrs. Hayes and her three children, two of the latter being minors at the date of the lease.

The lands conveyed contained about a thousand acres, embracing a tract known as the Morgan Point place, and another small tract, as stated in the lease, " sometimes called the Perry place."

Hayes and wife covenanted in the lease to keep their lessees " in the quiet enjoyment of the possession " of the lands during the entire term of five years, and the lessees agreed to pay $4 an acre annually for all the open and tillable land, and to do certain fencing.   It is recited in the lease that all the lands embraced in it were at the time " under and subject to a trust deed or mortgage for the sum of about $4,000, and interest thereon, due on or about March 1, 1879, and it is provided that if the lessors fail to pay this debt, or to secure delay in enforcing its collection, the lessees have the right to pay it, and to be substituted to all the rights of the holders of the mortgage.

It is also recited in the lease, that the lessees are not " to be held responsible for accidents and misfortunes, but should the buildings, or any of them, be destroyed by fire or other unavoidable accidents," then the lessees " are to erect at their own expense such buildings as will answer their purpose."   The lessees were given the privilege to clear up and cultivate, free of rent, any of the land except " the grass lands and lands that had been once cleared up."

On February 15, 1878, the Factors & Traders' Insurance Company and the Sun Mutual Insurance Company of New Orleans, each issued policies of insurance for $1,500 to A. J. Hayes and wife and children, on a gin-house, grist-mill, gin stands, engine, boiler, etc., as the property of Hayes, wife and children, located on the premises leased to Ferguson and Hampson.

It appears that these policies were taken out and the premiums paid by Ferguson and Hampson, and the policies contain this clause: "Loss, if any, payable to Ferguson and Hampson."

This insured property was destroyed by fire June 2, 1878. A. J. Hayes made proof of the loss and damage as required by the provisions of the policies, and under an adjustment made with the companies, they paid $1,849 to Ferguson and Hampson in sixty days after the fire. A. J. Hayes died in Memphis in 1878.

It appears from the record, that the small tract known as the Perry place, mentioned in the lease, was in litigation in the courts of Arkansas in the ejectment suit, brought June 8, 1877, by A. J. Hayes and wife, E. M. Hayes, and A. J. Hayes as next friend of his two minor sons, against R. P. Perry, who, it seems, held it, claiming title as a purchaser from a party who had bought it at a tax sale. A receiver was appointed in this litigation, and rents for this Perry place were paid to him for the years 1878 and 1879 by Ferguson and Hampson; and so far as appears, this was at the time, entirely acceptable to them and Hayes. This suit was finally dismissed

Hayes *v.* Ferguson.

at the fall term, 1879, of the circuit court for Mississippi county, at the cost of plaintiffs, and a writ of possession directed to issue to restore Perry to possession. The writ of possession issued February, 1, 1880, and was executed on the 17th of the same month.

On December 31, 1879, after the judgment of the circuit court in Arkansas in favor of Perry, but before the actual issuance and execution of the writ of possession, Hampson and Ferguson notified complainants that they had elected to rescind the contract of lease and intended to surrender the premises, giving several reasons therefor, the main one being that they had been evicted. They were immediately notified in return by complainants not to surrender to any one, and especially to Perry, and that they would be protected in their possession. We gather from the record, although the point is not made entirely clear in the brief, that defendants did abandon the leased premises and moved their property to another plantation owned or operated by them, before the actual issuance and service of the writ of possession from the court in Arkansas.

Several efforts were made by complainants, through their counsel, to effect a settlement with defendants in respect to the money due for rent of the leased lands, and that collected on the insurance policies.

The parties failing to agree, the bill in this cause was filed January 17, 1880, seeking to recover the rents due under the lease for the years 1878 and 1879, to hold the defendants to the contract for the whole

five years, and to compel them to pay over the insurance money with interest, or to apply it to rebuilding the gin-house, grist-mill, and other property on the leased premises destroyed by fire.

The bill also asked for the appointment of a receiver to take charge of and rent out the property pending the litigation, or until the expiration of the lease. By consent of parties, a receiver was appointed, who has rented out the Morgan Point plantation for the unexpired period of the lease at $4 per acre per year for the open and tillable land. Upon the hearing, the chancellor gave complainants a decree for the balance of the rents due for the years 1878 and 1879, amounting to $752.12; also held that they were entitled to recover the insurance money with interest, less the premiums paid, amounting to $225, and $168.75, the adjusted loss on the grist-mill.

The chancellor held that defendants were liable for $30, one-half of the cost of having the lands cultivated by Ferguson and Hampson surveyed, and the amount ascertained; and also, that they were bound for $50, one-half the compensation allowed the receiver. He refused to hold defendants for the rent for the years 1880, 1881 and 1882. From this decree both parties appealed.

The Referees have reported that defendants were not evicted from any portion of the leased lands; that they, without sufficient cause, abandoned the premises, when notified that they would be protected in their possession; that they should be held liable for rent for the years 1880, 1881 and 1882, upon the basis of

$4 per acre, for 277$\frac{21}{100}$ acres, the amount cultivated by them, and for which they were liable for rent for the year 1879.

They also report, that the defendants are liable for the insurance money with interest, less $168.75, the loss of grist-mill, and the value of the use of said gin for four and a half years, and that they were not bound to rebuild the destroyed property. Their report further holds, that the rents received by the receiver should go to defendants, but should be applied as credits on the rents due from them.

The Referees recommend, in taking the account upon the basis of their report, that defendants be credited for each of the five years with the sum of $60 for rent on Perry place.

They recommend that the defendants are not entitled to a credit for $200 attorney's fees and $30 costs, paid by them in the suit in Arkansas against Perry to recover the Perry place, as the same were not provided for in the lease, and it not appearing that complainants ever authorized these payments or ratified them, as they did the lease and the payments thereunder.

Defendants employed, at the request of A. J. Hayes, a man and paid him $50 to guard the Perry place and keep off Perry, and the report recommends that this be allowed as a credit. But inasmuch as it does not appear in the record what the loss of defendants is in the loss of the use of the gin, etc., for the four and a half years, the time embraced from their destruction by fire until the expiration of the lease,

they recommend that the cause be remanded for taking proof as to the value of this use, and for taking an account upon the principles recommended in the report.

Both parties have excepted to the report, and under their exceptions the whole case is before us. We will not take up the exceptions *seriatim*, but will announce certain general principles applicable to the controlling facts, as we understand them from the record, which determine and settle the rights of the parties. It is to be noted that the covenant in the lease is for quiet possession, and not for *seizin*. And, as was said by McKinney, J., in the case of *Kincaid* v. *Brittain*, 5 Sneed, 124, "the legal effect of the covenant of warranty and for quiet enjoyment, is very different from that of the covenant for *seizin*. The former are regarded as assurances to the purchaser of a permanent, undisturbed possession of the premises conveyed, and, therefore, are only broken by his *eviction*, actual or constructive, until when the purchaser can have no remedy, but must await, at whatever hazard of ultimate loss, the event of his involuntary *disseizin* by the paramount title, before he can be heard to complain of a breach of either covenant."

Moreover, it is clear from the evidence of the defendants themselves, that they knew of the litigation over this Perry place when they took possession under the lease, for one of them testifies that the attorney employed to prosecute the suit for Hayes refused to take charge and bring it until they agreed to secure his fee, and this they did, and afterwards paid it. In

addition to this, they paid the rent, $60 per year, for the place, to the receiver appointed by the court in Arkansas, for the years 1878 and 1879, without demurrer at the time, so far as appears from the record.

The suit was instituted by A. J. Hayes, the husband and father of complainants, and it is not made certain that the complainants knew any thing of it until after its determination in the fall of 1879, after the death of A. J. Hayes, and when notified by defendants that they had elected to rescind the contract because of their eviction. Upon being thus notified, complainants refused to accept a surrender of the premises, and directed defendants to hold possession, promising to protect their possession against the result of the litigation against Perry.

It is clear, also, that the reasons given in their notice of December 31, 1879, for electing to rescind the contract, and abandoning the premises, were studied, evasive, and, in great part, untrue, as applied to their relations to the subject-matter of the contract. They were not actually evicted from the premises. Under the facts in the case, taken in connection with the covenant in the lease, they were not constructively evicted, even if the doctrine of constructive eviction, as applied to paramount titles, was applicable to cases of this character. We hold, therefore, that the Referees were correct in reporting that the abandonment of the leased premises, by defendants, under the facts and circumstances of the case, was voluntary and without sufficient cause. We also hold, under the facts, that

even an actual eviction from the Perry place, would not have justified an abandonment of the contract, and the remaining plantation embraced in the lease.

The lease, as to the rents to be paid, although of tracts in gross, was of open and tillable land, and the rental was to be measured by the number of acres cultivated at so much per acre; and, under the facts developed in this record, the actual loss of the Perry place would not warrant a rescission of the contract, but an abatement of the rent.

The contention cannot be sustained that the Perry place was the material inducement to the lease, and that the Morgan Point place was practically valueless without it, for the receiver appointed in this case, immediately rented the Morgan Point place without the Perry place, at an annual rental of $4 per acre for the open land, the same price agreed to be paid by defendants in the lease for both. The report of the Referees, therefore, holding the defendants bound for the rents, according to the terms of the lease, for the five years, is correct.

The second point of serious contention is the insurance money. It is not free from difficulty, and we are not aware that the precise point involved has ever been before this court. While the authorities are not in fatal conflict on the general principle involved, there is great conflict in the result reached in its application by different courts. The policies in this case were taken out in the name of Hayes and wife and children, and insured *their* property and interest, not the leasehold interest of the defendants. The contract

was to insure the property of Hayes, wife and children, and the loss or damages paid under it was the contract value of their property, and not the value simply of the lease interest therein of the defendants. The provision in the policies, "loss, if any, payable to Ferguson and Hampson," cannot, in legal effect, convert the contract into one insuring simply the interest of Ferguson and Hampson.

As was said by the court in the case of *Grosvener* v. *Atlantic Insurance Company*, 17 N. Y., 391, construing a policy containing a similar clause, "they are merely the appointees of the party insured to receive the money." That was a case where the property of a mortgagor was insured and the policy contained a clause that the loss, if any, was to be paid to the mortgagee. And says the court, "the provision in the policy as to the loss payable to mortgagee had no more effect upon the contract of insurance than it would if it had been provided that the loss, if any, should be deposited in a specific bank to the credit of the party insured. There is nothing in the language of the policy in which the court can adjudge that, in legal effect, it is a contract insuring the interest of the mortgagee as such, except in the provision which declares that the loss, if any, which occurs under the contract insuring the mortgagor's interest, shall be payable to the mortgagee. That provision merely designates a person to whom such loss is to be paid, and shows that he is a person who *may have* an interest in its being so paid."

The defendants in this case did have an interest in

the policies being paid to them.   A fair and equita-
ble construction of the lease, imposed upon them the
duty, and such was to their interest, to rebuild the gin-
house and other property destroyed by fire, or to put
up buildings of the same character, suitable to carry
on the operations of the plantations.   It is manifest,
we think, that it was the intention of the parties,
that the insurance money should be applied to re-
placing the property destroyed by the fire, as in
erecting buildings and getting machinery that would
meet the wants of the farm as did the property de-
stroyed.   This being so, the defendants are not entitled
to retain it.   Upon the theory of the Referees, that
they were not bound, under the lease, to restore or
replace the property destroyed by fire, having refused
to apply the insurance money to that purpose, and
having, as they say, wrongfully abandoned the premises,
thereby breached their contract of lease, we are unable
to see upon what principle they are entitled to retain
this money, a sum equal to the value of the use of
the gin-house, mill, etc., destroyed, for four and a half
years, the period of time elapsing from their destruction
until the expiration of the lease.   They had the right
to apply the insurance money to replacing the destroyed
property, in order to its use by them under the lease.
That was their interest in the policies.   Even if it
were optional with them to rebuild, the insurance
money did not belong to them for any other purpose
or to any greater extent than was involved in the use
of the buildings and property destroyed; and when
they voluntarily surrendered the premises and breached

their contract, their interest in it and right to it ceased, and they should have paid it over to complainants.

We hold, therefore, that the complainants are entitled to recover this insurance money, less the premium of $225, and the $168.75, loss on grist-mill, with interest from the date they personally refused to apply it to replacing the property destroyed. It appears from the proof that defendants cultivated $257\frac{91}{100}$ acres in 1878, and $277\frac{91}{100}$ acres in 1879. They should be charged with $4 per acre for $277\frac{91}{100}$ acres for 1879, 1880, 1881 and 1882, less $60 a year, the value, as it appears, of the land used, belonging to the Perry place, with interest on the yearly rental thus found to be due from the 15th of November of the year for which it accrued to the present time. The defendants are not liable for any part of the sum paid for having the cultivated lands embraced in the lease surveyed. The compensation of the receiver appointed in this cause will be paid out of the rents received by him, and the defendants will be credited with the rents, less his compensation. They should be credited with all payments made to A. J. Hayes, his wife, or either of their children, as shown by the proof, on account of their lease. They should be credited by the $50 paid Carson for defending the Perry place; and, also, the $200 paid attorneys for prosecuting the suit in Arkansas, and the costs of that paid by them. These credits will be applied to the rental due at the time they were paid.

The clerk of this court will cast up the items of account as herein indicated, and report the same to

the court. The exceptions of defendants to the report will be overruled, and a decree will be entered here for the amount ascertained to be due by the report of the clerk herein ordered. The defendants will pay the costs of this court and the court below.