**ST. PAUL SURPLUS LINES INSURANCE COMPANY, Plaintiff,**

v.

**BISHOPS GATE INSURANCE COMPANY, John Michael Poland VFW Post 7974, Appellee,**

**Herman Rush and wife Beverly Rush, Appellants, and Benton Banking Company.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Oct. 7, 1986.

Application for Permission to Appeal Denied by Supreme Court Jan. 5, 1987.

Alvin Y. Bell, Chattanooga, for appellants.

M. Randall Sellers, Cleveland, for appellee.

**CRAWFORD, Judge.**

Although this suit was commenced by an insurance company seeking a declaratory judgment as to coverage and spawned a somewhat complicated maze of claims, cross-claims, and counter-claims, this appeal involves only a dispute between the lessors and the lessee of real property over the proceeds of fire insurance policies on the leased premises. To detail the precise course of the litigation will only serve to complicate the rather simple factual situation, so we will handle the case as though the litigation was simply between Herman Rush and wife, Beverly Rush, plaintiffs-lessors, and VFW Post 7974, defendant-lessee.

The Rushes owned a commercial building which they leased to VFW for a period of two years by instrument dated August 11, 1982. The agreement recited that "the parties desire to enter into a lease agreement defining their rights, duties and liabilities relating to the premises," and further provided in part pertinent to this appeal:

\*     \*     \*     \*     \*     \*

### V.

#### *Alterations, Additions, and Improvements*

a. Subject to the limitation that no substantial portion of the building in the demised premises shall be demolished or removed by lessee without the prior written consent of lessor, lessee may at any time during the lease term, subject to the conditions set forth below and at its own expense, make any alterations, additions, or improvements in and to the demised premises and the building. Alterations shall be performed in a workmanlike manner and shall not weaken or impair the structural strength or lessen the value, of the building on the premises.

b. Conditions with respect to alterations, additions, or improvements are as follows:

1. All work shall be done in accordance with requirements of local and state reg-

ulations pertaining to safety, including but not limited to fire regulations.

2. Prior to commencement of any work lessee shall pay the amount of any increase in premiums on insurance policies provided for herein because of endorsements to be made governing the risk during the course of work.

3. All alterations, additions, and improvements on or in the demised premises at the commencement of the term, and that may be erected or installed during the term, shall become part of the demised premises and the sole property of lessors, except that all moveable items and fixtures installed by lessee shall be and remain the property of lessee.

4. Lessee will be and remain liable for all indebtedness incurred as a result of remodeling the premises for lessee's purposes.

\* \* \* \* \* \*

## VI.

### Repairs

Lessee shall, at all times during the lease and at its own cost and expense, repair, replace, and maintain in good, safe, and substantial condition, all buildings and any improvements, additions, and alterations thereto, on the demised premises, and shall use all reasonable precaution to prevent waste, damage, or injury to the demised premises.

\* \* \* \* \* \*

## VII.

### Insurance

During the term of the lease and for any further time that lessee shall hold the demised premises, lessee shall obtain and maintain at its expense the following types of insurance:

1. *Fire Insurance.* Lessee shall keep all buildings, improvements, and equipment on the demised premises, including all alterations, additions, and improvements, insured against loss or damage by fire.

\* \* \* \* \* \*

## XX.

### Option to Renew or Purchase

Lessors grant to lessee an option to renew this lease for a reasonable number of years and at a reasonable rental fee after the expiration of the term of this lease. Lessors further grant to lessee the first option to purchase the premises described herein at a reasonable purchase price should lessors decide to sell said premises at the expiration of the term of this lease.

After the lease was executed, the VFW made extensive improvements to the building in order to use it as a VFW club. On or about August 13, 1982, the VFW obtained policies of fire insurance totaling $60,000 on the building and was listed in the policy as the insured. When the Rushes learned that they were not named as insureds in the policies and that the holder of the mortgage on the property was not listed as the mortgagee, they contacted the agent that issued the policies and were successful in adding the mortgagee as loss payee. The VFW did not agree with this change and ordered the agent to remove the mortgage as a loss payee from the policies. After the building was totally destroyed by fire on August 18, 1983, the controversy arose as to who was entitled to the proceeds of the insurance policies. VFW contended that it was entitled to the entire proceeds, and the Rushes contended that they were entitled to the entire proceeds. The trial court found the value of the destroyed building was $70,000 and held that the proceeds of the two policies ($60,000 less $500 deductible) should be prorated between the Rushes and VFW with $31,500 awarded to the Rushes and $28,000 awarded to VFW. The insurance companies involved have not appealed the judgment concerning their liability, and the only issue is that presented by the Rushes which is "whether the trial court erred in prorating the insurance proceeds instead of awarding the entire amount to them."

The lease agreement between the Rushes and VFW establishes their respective rights, duties, and obligations. The Rushes contend that the proper construc-

tion of the lease agreement requires that the entire insurance proceeds be paid to them because the value of the destroyed property exceeds the amount of the proceeds. On the other hand, VFW contends that since it had made various improvements to the property it had an insurable interest which the trial court properly protected by its prorata award of insurance proceeds. The whole question boils down to what the lease agreement provides in this regard. Although both parties in their briefs espouse rules of construction concerning ambiguous instruments, we do not find from our reading of the lease that it is ambiguous. While it is somewhat lacking in content as compared to what one normally sees in leases of commercial property, there is no ambiguity.

█ The cardinal rule of construction of written instruments is that the intention of the parties as ascertained from the language of the instrument controls. *First American National Bank v. Chicken System of America, Inc.*, 510 S.W.2d 906, 908 (Tenn.1974). In construing contracts, the words expressing the parties' intention should be given their usual, natural, and ordinary meaning, *Moore v. Life & Casualty Insurance Company*, 162 Tenn. 682, 686, 40 S.W.2d 403, 404 (1931), and neither party is to be favored in the construction. *Ballard v. North American Life & Casualty Ins. Co.*, 667 S.W.2d 79, 82 (Tenn.App. 1983).

█ In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust. *Ballard*, 667 S.W.2d at 82. Furthermore, this Court cannot make a new contract for the parties, but can merely construe the lease as written. *See Stone v. Martin*, 185 Tenn. 369, 206 S.W.2d 388 (1947).

█ The lease agreement before us unequivocally requires the lessee, VFW, at its own cost to "repair, *replace* and maintain ... all buildings and any improvements ..." (emphasis supplied). Coupled with this provision, the lessee is required "to obtain and maintain at its expense fire in-

surance." Giving the language in the lease agreement its usual, natural, and ordinary meaning, it seems clear that the parties intended for the building destroyed by fire to be replaced at lessee's expense, and in order to enable lessee to provide the necessary funds to do this, the lessee is required to insure. A somewhat analogous situation in reverse was involved in *Evco Corporation v. Ross*, 528 S.W.2d 20 (Tenn.1975), which involved the construction and interpretation of a lease agreement as it related to the lessor's duty to rebuild the premises. The lease agreement provided that the "lessor shall be responsible for all major repairs ..." and further provided that the lessor must carry fire insurance upon the building. The building was totally destroyed by fire, and lessee filed suit to enforce the covenants of the lease regarding rebuilding. The Supreme Court noted that a special or limited covenant by lessor to make repairs does not obligate the lessor to rebuild the structure in the event of total loss, but that a general covenant to repair usually includes cases of total destruction. The court stated:

> It was an unconditional covenant to make all major repairs to the premises during the term of the lease coupled with an agreement on the part of the lessors to procure fire insurance upon the building "for any damage thereto by fire."
>
> *     *     *     *     *     *

In the present case, however, there is not only the broad agreement to make all major repairs that may become necessary during the term of the lease, but there is a special and specific undertaking on the part of the lessors to carry fire insurance upon the building "for any damage" to the building which might result from fire.

Since there was a fire loss in this case, we are convinced that the provisions of this lease are such that the loss must be borne by the lessors.

*Id.* at 22–23.

We recognize, of course, that the lessors in this case could have insured the building against fire damage wholly apart

from the lease provisions. They had an insurable interest in the property, which they could have protected by appropriate coverage. In this case, however, they expressly covenanted with the tenant that they would carry fire insurance for any damage to the building during the term of the lease, and simultaneously agreed to make all major repairs. We conclude that under these circumstances the legal effect of these covenants was to make the lessors responsible for proper restoration of the premises after a fire loss, there being no other provisions in the lease to the contrary.

*Id.* at 24.

As the lessor did in *Evco*, the lessee VFW did in the case before us. VFW agreed to repair or replace the building, and agreed to insure for fire. VFW was obligated under the lease to replace the building, and obviously the funds from the fire insurance policies were to be used for that purpose. The Rushes have not sought to require VFW to replace the building, but are content to rest with an award of the fire insurance proceeds. The briefs of the parties indicate they consider the lease terminated and present no issue concerning that point.

In *Hayes v. Ferguson*, 83 Tenn. 1 (1885), the lessor sued *inter alia* to require lessee to pay over insurance proceeds, or to apply same to rebuilding the leased premises destroyed by fire. The lease provided that if the buildings are destroyed by fire, lessees "are to erect at their own expense such buildings as will answer their purpose." *Id.* at 3. The lessees procured and paid the premiums on a policy of fire insurance in the name of the lessors but which provided, "[l]oss, if any, payable to Ferguson and Hampson [lessees]." *Id.* at 4. After the property was destroyed by fire, lessees refused to rebuild and surrendered the premises. The Court held that the lessors were entitled to the proceeds of the insurance policy, and in that regard stated:

A fair and equitable construction of the lease, imposed upon them [lessees] the duty, and such was to their interest, to rebuild the ginhouse and other property destroyed by fire, or to put up buildings of the same character, suitable to carry on the operations of the plantations. It is manifest, we think, that it was the intention of the parties, that the insurance money should be applied to replacing the property destroyed by the fire, as in erecting buildings and getting machinery that would meet the wants of the farm as did the property destroyed. This being so, the defendants are not entitled to retain it.... They had the right to apply the insurance money to replacing the destroyed property, in order to its use by them under the lease. That was their interest in the policies. Even if it were optional with them to rebuild, the insurance money did not belong to them for any other purpose or to any greater extent than was involved in the use of the buildings and property destroyed; and when they voluntarily surrendered the premises and breached their contract, their interest in it and right to it ceased, and they should have paid it over to complainants.

*Id.* at 13.

In the case before us, the insurance proceeds should have been used for the rebuilding of the premises, but since they were not so used, the Rushes as lessors are entitled to the proceeds.

Therefore, the judgment of the trial court prorating the proceeds of the insurance policies is reversed, and judgment is entered for the Rushes in the entire amount due under the policies. The case is remanded for such further proceedings as necessary, and costs are assessed against the appellee.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.