# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 9, 2016 Session

## CRESCENT SOCK COMPANY v. ROBERT H. YOE, III, ET AL.

**Appeal from the Chancery Court for McMinn County**
**No. 2013-CV-297      Michael J. Sharp, Judge[1]**

_____

**No. E2015-00948-COA-R3-CV-FILED-MAY 25, 2016**

_____

Crescent Sock Company filed this action against its Chief Executive Officer, Robert H. Yoe, III, the day before Crescent terminated his employment. It sought a declaratory judgment that Yoe's employment contract and an agreement between Crescent and Yoe Enterprises, Inc., a company wholly owned by Yoe, were invalid and unenforceable. After a seven-day bench trial, the court found the two agreements to be valid. It enforced them and found in favor of Yoe and Yoe Enterprises on some of the causes of action in their counterclaim. The trial court awarded Yoe and Yoe Enterprises attorney's fees of $765,880.77. Yoe's employment contract, however, does not include Yoe Enterprises among those entitled to seek "prevailing party" fees and expenses. Accordingly, we vacate so much of the trial court's judgment as grants attorney's fees and litigation costs to Yoe Enterprises. However, we affirm the trial court's judgment holding that Yoe is entitled to fees and expenses, but vacate the amount of his award. This case is remanded to the trial court for a hearing to determine how much of the $765,880.77 in attorney's fees is properly associated with the professional services rendered to Yoe Enterprises. The trial court will make the same calculation with respect to the expenses. The trial court is instructed to subtract the fees and expenses applicable to Yoe Enterprises from the total fee award of $765,880.77 and the award of expenses and decree the balance to Yoe. In all other respects, the judgment of the trial court is affirmed. On remand, the trial court is further instructed to award Yoe his reasonable attorney's fees and expenses on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated in Part and Affirmed in Part; Case Remanded for Further Proceedings**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

_____

[1] Sitting by interchange.

John T. Winemiller, R. Bradford Brittian, and Ian G. McFarland, Knoxville, Tennessee, for appellant, Crescent Sock Company.

Gary R. Patrick, Cara J. Alday, and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for appellees, Robert H. Yoe, III, and Yoe Enterprises, Inc.

## I.

In 2000, Crescent hired Yoe to be its CEO and President, tasking him to run its hosiery manufacturing business. Over the next thirteen years, Crescent and Yoe entered into a series of contracts. On February 13, 2012, they executed one of the contracts at issue on this appeal, *i.e.*, Yoe's executive employment agreement (the employment agreement). It provides, among other things, that Crescent would be liable to Yoe for a severance payment of $2,000,000 if Yoe was fired without cause. On September 4, 2012, Crescent and Yoe Enterprises executed a contract (the Yoe Enterprises contract) providing, in pertinent part, as follows:

> WHEREAS, Yoe and Crescent have from time to time entered into certain business agreements relative to branding and intellectual property rights that are not memorialized in the [employment agreement];
>
> WHEREAS, the Parties desire to memorialize the prior business agreements concerning branding and intellectual property rights in a single agreement;
>
> . . . the Parties, intending to be legally bound, hereby agree as follows:
>
> 1. <u>Ownership of Intellectual Property</u>. Any and all new brands, and other intellectual property relating to such new brands, that are developed, registered, trademarked, copyrighted, invented, started, conceived or designed by Crescent, Yoe and/or [Yoe Enterprises] from January 1, 2009 through the termination of Yoe's employment with Crescent (the "Intellectual Property") shall be 100% owned by [Yoe Enterprises]. Crescent covenants and agrees that, on or after the date of this Agreement, it shall perform, . . . any and all such further acts and assurances as necessary to effectuate, evidence and consummate the assignment of the Intellectual Property to [Yoe Enterprises.]

2

(Underlining, capitalization, and defined term in quotation marks, in original.)

On September 3, 2013, Crescent filed this lawsuit asking the trial court to declare the employment agreement and the Yoe Enterprises contract invalid. The next day, Crescent fired Yoe without cause. The trial court found as follows regarding the circumstances of Yoe's termination:

> The court finds that on September 4, 2013, Mr. Yoe was fired from Crescent, along with five (5) other employees who were referred to as the "FITS Team." The court finds that when Mr. Yoe was fired, Crescent's attorneys met him at the business, along with a police officer. Mr. Yoe was simply served with a copy of the lawsuit filed by Ms. Allen and Ms. Boyd,[2] which had been filed on September 3, 2013. After being served, Mr. Yoe was forced to leave the business without being able to retrieve his personal computer or his other personal belongings.

(Footnote added.)

Yoe answered and filed a counterclaim against Crescent and a third-party complaint against Allen and Boyd.[3] The counterclaim sought relief in Yoe's name and in the name of Yoe Enterprises. The filing of the counterclaim prompted Crescent to file an "amended and restated complaint" stating that "[f]or the purpose of correcting the record, Plaintiff hereby amends its complaint to formally add YOE ENTERPRISES . . . as a Defendant in this matter." (Capitalization in original.) Following an unsuccessful attempt at mediation, the court heard the case at a bench trial in late September 2014 that lasted seven days. In a well-written, thorough fifty-four-page opinion and order, the trial court found that "Yoe and [Yoe Enterprises] have established that the contracts in question are enforceable contracts." In accordance with the Yoe Enterprises contract, the trial court held that three brands of socks created and developed during Yoe's tenure with Crescent, FITS®, Jacks, and Game Knits®, along with associated intellectual property rights, were all owned by Yoe Enterprises. The court also initially found and held that Crescent had an exclusive license to produce socks under these three brands.

---

[2] Cathy Allen and Sandra Boyd are members of the Burn family, which has owned and controlled Crescent since its inception in the early 1900s. Allen was Vice President and Treasurer, and assumed the role of President and CEO upon the termination of Yoe. Boyd was Corporate Secretary and became Chief Operating Officer after Yoe's termination.

[3] The third-party claims are not at issue on this appeal.

Yoe and Yoe Enterprises disputed the trial court's "exclusive license" decree. They moved to alter or amend the judgment in order "to request the clarification or revision of a single finding of fact" – the court's finding that "Crescent has the exclusive ability to manufacture the FITS brand socks. . . ." They asserted that the proof at trial established that Crescent was to have the continuing exclusive right to manufacture the FITS brand socks *only* if Yoe voluntarily left Crescent. The trial court agreed with the counter-plaintiffs, stating in its modified judgment, as follows:

> The court finds that the parties agree[d] that Crescent would have the exclusive ability to manufacture the FITS brand socks only if Mr. Yoe left Crescent voluntarily apart from the wishes of Ms. Boyd and Ms. Allen. Because the court finds that Crescent terminated Mr. Yoe's contract, the court finds that Crescent does not have the exclusive right to manufacture the brands owned by [Yoe Enterprises].

On January 14, 2015, Yoe and Yoe Enterprises filed a motion seeking discretionary costs of $28,058.44. In the same motion, they sought "other litigation costs and expenses of $108,833.43" under the terms of the employment agreement, which provides that "the prevailing party shall be entitled to recover reasonable attorney's fees, costs, and expenses from the adverse party." In opposition, Crescent argued that an award of attorney's fees was not appropriate, and asserted, in the alternative, that Yoe should not be awarded 100% of his attorney's fees because he did not prevail on all of the causes of action in the counterclaim. Crescent also argued that Yoe Enterprises was not entitled to any fees or expenses because it is not a party to the employment agreement and, hence, not a party to the "prevailing party" provisions. The trial court awarded Yoe and Yoe Enterprises all of the attorney's fees billed to them for the case, *i.e.*, a total of $765,880.77. The court also awarded Yoe and Yoe Enterprises discretionary expenses of $28,058.44 and "prevailing party" expenses of $108,833.43.[4] Crescent timely filed a notice of appeal.

## II.

Crescent raises the following issues on appeal:

---

[4] At some places in the record, these two figures are shown as $25,808.14 and $111,083.43. We have used the amounts that we believe are correct. If they are not, the trial court on remand can state what it finds the amounts to be.

4

1. Whether the trial court erred in awarding certain intellectual property to Yoe Enterprises, including several trademarks that the parties agree are owned by Crescent.

2. Whether the trial court erred in finding that Crescent's license to manufacture socks under the brands owned by Yoe Enterprises became non-exclusive when Crescent terminated Yoe's employment without cause.

3. Whether the trial court erred in awarding Yoe attorney's fees and litigation expenses.

4. Whether the trial court erred in awarding Yoe Enterprises attorney's fees and litigation expenses.

## III.

In this non-jury case, our standard of review is de novo upon the record of the proceedings below; however, the record comes to us with a presumption of correctness as to the trial court's factual determinations, a presumption we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). There is no presumption of correctness as to the trial court's legal conclusions. ***Campbell v. Fla. Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

## IV.

## A.

In its first issue, Crescent challenges the following portion of the trial court's ruling:

> Based upon [Yoe's] research and development, Yoe Enterprises, Inc. obtained a patent [for] the ornamental design for a toe seam and portion of a sock for the FITS® brand, and Patent No. D670,900 (see trial exhibit 67). Furthermore, Mr. Yoe obtained other intellectual property rights associated with the FITS®, Jacks and Gameknits brands, including trademark rights, domain rights and copyrights as to color, appearance, technology, packaging, and knitting machine specifications. (Exhibit 68). *The court finds that all of these intellectual*

5

*property rights are in the name of* [*Yoe Enterprises*]. (*Exhibit 68*).

(Emphasis added.) As can be seen, the court referenced trial exhibit 68, which is a chart listing trademarks, copyrights, and patents owned by Crescent and by Yoe Enterprises. Crescent interprets the trial court's statement that "all of these intellectual property rights are in the name of [Yoe Enterprises]" to mean that the court held that all of the intellectual properties listed on exhibit 68 are owned by Yoe Enterprises. We think the correct interpretation of the above paragraph is that all intellectual property rights associated with the FITS®, Jacks and Game Knits® brands are owned by Yoe Enterprises. In fact, the parties agree that the first six items listed on exhibit 68 are owned by Crescent. Yoe and Yoe Enterprises do not dispute the assertion in Crescent's brief that "the first six trademarks listed on Trial Exhibit 68 are trademarks unrelated to the FITS, JACKS, and GAME KNITS brands [and] are identified as trademarks registered in Crescent's name." (Capitalization in original.) Lest there be any question about this matter, the trial court on remand is instructed to enter an order reciting that Crescent owns the first six trademarks listed on trial exhibit 68.

## B.

Crescent next argues that the trial court erred in holding that Crescent's license to produce socks under the brands owned by Yoe Enterprises became non-exclusive when Crescent fired Yoe. This issue requires us to interpret the terms of the parties' written agreements. As we observed in *Wager v. Life Care Ctrs. of Am., Inc.*, No. E2006-01054-COA-R3-CV, 2007 WL 4224723, at *10-11 (Tenn. Ct. App., filed Nov. 30, 2007), another case involving an executive employment contract and involuntary termination,

> [i]n interpreting the contract, we must keep in mind several basic tenets of contract law. For instance, the language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). "All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). Also, words must be given their usual and ordinary interpretation. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986). "A strained construction may not be placed on the language used to find ambiguity where none exists."

***Farmers-Peoples Bank v. Clemmer***, 519 S.W.2d 801, 805 (Tenn. 1975).

\* \* \*

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles." ***Rainey***, 836 S.W.2d at 118. Of course, the "intention of the parties" refers to their intention when the contract was made, not their desired interpretations after a dispute arises. The court will look to the material contained within the four corners of the contract to ascertain its meaning as an expression of the parties' intent. ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975). Therefore, if a contractual clause, read in the proper context, unambiguously mandates a particular result, we will not disturb that result merely because it may be harsh for one party or the other.

\* \* \*

"Any number of papers may be taken together to make out the written expression of the contract of the parties, provided there is sufficient connection between the papers." ***Springfield Tobacco Redryers Corp. v. City of Springfield***, 293 S.W.2d 189, 197 (Tenn. Ct. App. 1956). "When the parties' agreement is contained in more than one document, all the documents should be considered together." ***Ewing v. Smith***, No. 85-294-II, 1986 WL 2582, \*3 (Tenn. Ct. App. M.S., filed Feb. 26, 1986).

Regarding the issue of the exclusive or non-exclusive nature of a license, a Federal Circuit Court has explained the general rule as follows:

Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license *as manifested by the terms of their agreement and examining the substance of the grant*. The use of the word "exclusive" is not controlling; what matters is the substance of the arrangement. Because patent rights are

7

rights to "exclude others," see 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that "others shall be excluded from practicing the invention" within the field covered by the license. Put another way, an exclusive license is "a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave." Thus, if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees.

*    *    *

*To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license in the area of exclusivity.*

**Textile Prods., Inc. v. Mead Corp.**, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (emphasis added; internal citations omitted). We agree with the Federal Court's analysis. "[A] transfer of patent rights that is silent on whether or not the patent owner retains the right to grant other licenses to the patented inventions in the area of exclusivity grants a nonexclusive license." **Buckhorn Inc. v. Orbis Corp.**, No. 3:08-CV-00459, 2009 WL 2176056, at *4 (S.D. Ohio, filed July 21, 2009) (citing **Textile Prods.**, 134 F.3d at 1484-85).

In this case, on December 14, 2007, Crescent and Yoe executed an amendment to Yoe's then-existing employment agreement[5] that provides, in pertinent part, as follows:

Whereas it is acknowledged:

There are no longer opportunities for [Robert H. Yoe, III] to make large monies from:

1. the sale of Crescent
2. the increases in the net worth of Crescent
3. bonuses resulting from Crescent net income

---

[5] Although this agreement was executed well before the execution of the two agreements Crescent sought to invalidate, the parties agree, and the trial court held, that the amendment was valid and pertinent to the licensing issue.

8

And where the executive board would like to make the job exciting and potentially financially rewarding for Bob and for the (Burn) family

The Executive Board has taken the below steps to align the short term and long term financial interests of Crescent stockholders and those interests of Bob's.

Any and all new brands & related materials: developed, registered, trademarked, copyrighted or otherwise started and or designed by Crescent in years 2009 through Bob's employment:

will be owned in full and completely by Yoe Enterprises. (At the time of this signing, none of these "new brands" have been trademarked.)

[Yoe Enterprises] will license the "brands" to Crescent for $1.00 a year.

\*    \*    \*

IF Bob leaves the company apart from the wishes of Sandra [Boyd] and Cathy [Allen] without a mutually approved license agreement.

THEN Crescent has the right to accept or reject a manufacturing/sourcing agreement with terms that would allow them exclusivity to providing socks at 5% Royalty fee.

(Underlining and capitalization in original; bullet points in original omitted.)

The Yoe Enterprises contract executed on September 4, 2012, which reaffirms that "[a]ny and all new brands, and other intellectual property relating to such new brands, that are developed . . . by Crescent, Yoe and/or [Yoe Enterprises] from January 1, 2009 through the termination of Yoe's employment with Crescent . . . shall be 100% owned by [Yoe Enterprises]," sets forth a royalty payment schedule providing that Crescent will pay one dollar in 2013 and 2014, and 5% of net sales in 2015 "and thereafter." The only provision containing the term "license" in this agreement states as follows:

9

> Licensing. On or before 1 year after the execution of this Agreement, [Yoe Enterprises] and Crescent will enter into an agreement for licensing/manufacturing/sourcing relative to the Intellectual Property . . .

(Underlining in original.) As Crescent recognizes in its brief, "there was no evidence at trial that any such future agreement was ever prepared, let alone executed."

Nothing in the employment agreement, the Yoe Enterprises Contract, or the 2007 amendment supports a conclusion that Yoe or Yoe Enterprises intended to grant Crescent an exclusive license in the event Yoe's employment was involuntarily terminated. The 2007 amendment, which the trial court found to be determinative on this question, explicitly provides that Crescent would be granted an option "to accept or reject a manufacturing/sourcing agreement with terms that would allow them exclusivity" *only if* Yoe left the company "apart from the wishes of" Boyd and Allen, the individuals who, on behalf of Crescent, ultimately fired him. The evidence fully supports the trial court's determination that Crescent does not have an exclusive license.

## C.

Crescent argues that the trial court erred in awarding Yoe his attorney's fees. The employment contract contains the following fee-shifting provision:

> 12. DISPUTE RESOLUTION
>
> a. Any claim or controversy arising out of or related to this Agreement (a dispute) shall be resolved as set forth in this Paragraph 12.
>
> b. Either party may give the other party written notice of a request for resolution of a "dispute" (a Request). For the next 20 days, the parties shall meet and confer in good faith (with whatever advisors they desire, at their own expense), in an effort to resolve the dispute amicably and expeditiously.
>
> c. In the event the Dispute is not resolved within the 20 day period, the parties shall participate in non-binding mediation in McMinn County, Tennessee, pursuant to such rules as the parties may agree.

10

d. In the event the dispute is not resolved by mediation within an additional 60 days, the parties may within 10 days, agree in writing to submit the "Dispute" to binding arbitration in accordance with the rules to be agreed upon by the parties in such writing.

\*     \*     \*

f. In the event the parties do not agree to arbitrate the "Dispute" with the 10 day period, then either party may commence litigation to resolve the "Dispute" in a state or federal court located in Knox County, Tennessee, with respect to which each party hereby irrevocably consents and submits to the exclusive jurisdiction thereof.

g. If any civil action at law or equity, including any action for declaratory relief, is brought to construe, enforce or interpret the provisions of the Agreement pursuant to Paragraph 12 (f), the prevailing party shall be entitled to recover reasonable attorney's fees, costs and expenses from the adverse party.

Regarding venue, the employment agreement also provides:

This "Agreement" shall be governed, construed, and enforced in accordance with the laws of the State of Tennessee, and the parties agree that any judicial proceeding hereunder shall be held in the state o[r] federal courts located in McMinn County, Tennessee.

The first court action addressing the parties' disputes was Crescent's filing of a complaint in the trial court, the McMinn County Chancery Court. The employment agreement makes alternative dispute resolution optional; the first step towards ADR would be that "[e]ither party *may* give the other party written notice of a request for resolution" of a dispute. (Emphasis added.) Crescent obviously elected not to pursue this route, but rather proceeded directly to court. Still, Crescent argues that Yoe did not follow the steps for ADR to which he agreed in section 12 of the employment agreement, and, as a consequence, is not entitled to seek attorney's fees and expenses against Crescent. Furthermore, Crescent asserts that, since Yoe did not commence litigation in Knox County pursuant to paragraph 12(f), he thereby forfeited his right to seek attorney's fees and expenses. Yoe responds by pointing out that if he had filed in Knox County, his action, in all likelihood, would have been dismissed pursuant to the prior suit pending

11

doctrine, "which dictates that a case is subject to dismissal if there is a prior lawsuit pending involving the same parties and the same subject matter." ***West v. Vought Aircraft Indus., Inc.***, 256 S.W.3d 618, 620 (Tenn. 2008). Yoe also asserts that his counterclaim was compulsory in nature under Tenn. R. Civ. P. 13.01, such that he was required to raise his claims in response to Crescent's McMinn County Chancery Court lawsuit. The trial court held that Crescent waived the Knox County venue requirement by electing to file in McMinn County, and that the provision in the agreement that in "any civil action" the prevailing party is entitled to recover attorney's fees and expenses was applicable and enforceable. We agree with the trial court. This litigation ended up in McMinn County because Crescent – totally on its own – decided to pursue relief in that venue. Yoe did not violate the terms of section 12 of the employment agreement by not pursuing ADR or by filing the counterclaim in the trial court.

Crescent next argues that Yoe should not be awarded all of his attorney's fees because he did not prevail on all of his claims in the counterclaim. In his September 19, 2013 counterclaim, Yoe asserted causes of action for breach of contract, quantum meruit, and unjust enrichment. In his amended counterclaim filed January 10, 2014, he added claims for "misfeasance," negligence, misappropriation/conversion of the FITS® brand, and breach of a "duty to perform with due care." The amended counterclaim was brought on behalf of both Yoe and Yoe Enterprises. Yoe and Yoe Enterprises later voluntarily dismissed all of their causes of action except for Yoe's claims for breach of contract, quantum meruit, and unjust enrichment, and Yoe Enterprises' claim for breach of contract. After the trial court entered its initial post-trial order, Crescent argued that Yoe was not entitled to recover fees and costs related to his nonsuited causes of action. The trial court held as follows in its final judgment:

> The court has already found that the employment contract is valid and enforceable, and the executive employment agreement is valid and binding. The court has also found that the business agreement is valid and enforceable. Based upon all of the above, the court has already found that attorney[']s fee[]s should be awarded in this matter. The court finds that the real issue is whether the attorney fee[]s involved are reasonable and necessary, under all of the facts and circumstances in this case. This court has reviewed the litigation costs and charges and expenses, including the attorney[']s fee[]s incurred against the plaintiffs['] claim. This court has also given great consideration to the amount of time spent by Mr. Yoe and [Yoe Enterprises]' attorneys, and the complexity of the issues involved and the sheer amount of time spent to review the thousands of pages of documents.

12

The court has also given great consideration to the sworn affidavit of attorney Sam Elliott and his statements based upon his review of the requests for attorney[']s fee[]s, including but not limited to, the time spent, the hourly billing rate for both Mr. Patrick and his firm as well as Mr. Jenne and his firm. Based upon all of the above, this court finds that the attorney[']s fee[]s requested by Mr. Patrick and Mr. Jenne are reasonable, given all of the facts and circumstances in this case.[6]

Specifically, the court finds that there is a common core running throughout the entirety of this case. The court finds that the elements were so intertwined that there would be no way to reasonably determine which specific parts of any specific deposition may have been used regarding some issues but not others. In fact, given the nature of the case, this court has no way to determine which specific part of a deposition may have been used and/or why it was used. The court has no way to break down how much was spent addressing this specific individual claims based upon any certain or particular part of the various discovery that was taken in this case. The court simply finds that there is a common core of issues in the various claims that w[ere] tried in this case. The court finds that the use of discovery and the various parts of discovery are a part of the strategic plan of any counsel in preparing his or her case for trial. Therefore, based upon the fact that there is a common core running throughout the entirety of this case, the court finds that the entirety of the attorney[']s fee[]s charged by Mr. Patrick as well as Mr. Jenne is reasonable, given all of the facts and circumstances present in this case. Therefore, the court finds that the motion for attorney[']s fee[]s and expenses in the total amount of $765,880.77 is reasonable and shall be awarded.

(Footnote added.)

---

[6] Crescent does not contest the reasonableness of the fees or whether the work was necessary.

The United States Supreme Court addressed an argument similar to Crescent's, *i.e.*, that Yoe was not the "prevailing party" on every one of his claims, and therefore should not recover all of his fees, in ***Hensley v. Eckerhart***, 461 U.S. 424, 434-35 (1983), stating:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> . . . In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

(Internal citations and footnotes omitted); *see also* **Waldo v. Consumers Energy Co.**, 726 F.3d 802, 822-23 (6th Cir. 2013). Tennessee courts have applied this result-oriented "common core of facts" analysis in several cases. **State Auto Ins. Co. v. Jones Stone Co.**, No. M2009-00049-COA-R3-CV, 2009 WL 4841080, at *10-11 (Tenn. Ct. App., filed Dec. 15, 2009); **Brunsting v. Brown**, No. M2000-00888-COA-R3-CV, 2001 WL 1168186, at *6-8 (Tenn. Ct. App., filed Oct. 4, 2001); **Lowe v. Johnson Cnty.**, No. 03A01-9309-CH-00321, 1995 WL 306166, at *6-7 (Tenn. Ct. App., filed May 19, 1995).

In the present case, we agree with the trial court that the issues involved with the claims raised by Yoe were closely intertwined and involved a common core of facts. Furthermore, it is clear that Yoe obtained an excellent and successful result at trial. Under these circumstances, we affirm the judgment that Yoe is entitled to the entire amount of his attorney's fees and costs under the employment agreement.

### D.

The trial court held that "Mr. Yoe and [Yoe Enterprises] are entitled to recover their attorney's fees." It ordered Crescent to pay the entire attorney's fee bill rendered to Yoe, a total amount of $765,880.77. All the parties are in agreement, however, that the employment agreement providing for attorney's fees and costs to the prevailing party was between Yoe and Crescent, and, therefore, Yoe Enterprises is not entitled to an award of its attorney's fees and expenses under that agreement. Although Yoe Enterprises is a corporation wholly owned by Yoe, it and Yoe are legally distinct from one another, and have been treated as such throughout this litigation. The counter-plaintiffs' counsel listed Yoe Enterprises as a separate counter-plaintiff, and brought distinct claims on its behalf, as distinguished from those asserted by Yoe. The attorneys for the counter-plaintiffs also achieved success on behalf of Yoe Enterprises, as it prevailed on its claim related to intellectual properties owned by Yoe Enterprises.

None of the proof regarding attorney's fees contains any differentiation with respect to fees attributable or charged to Yoe, as opposed to Yoe Enterprises. All of the bills and documentation treated the case as if the attorneys had only one client; Yoe and Yoe Enterprises were not billed separately. At oral argument, counsel for the counter-plaintiffs stated that they in reality had just one client, Mr. Yoe, which is somewhat understandable given that he is the only natural person in the case and he wholly owns Yoe Enterprises. But the fact remains that Crescent agreed to pay attorney's fees to *Yoe* in the event he prevailed against it in a legal dispute; it never agreed to pay the fees of Yoe Enterprises. Counsel also argues that it is impossible to go back and separate the time spent for his individual claims from the time spent for Yoe Enterprises' claims. While it may be difficult, it is not impossible. In any event, to force Crescent to pay the *entire* bill of $765,880.77 would be indulging in the fiction that all of the work done by

15

Yoe Enterprises' attorneys on its behalf was provided gratis, which is neither logical nor just. Consequently, we remand for a determination of the amount of attorney's fees attributable to the work done for Yoe Enterprises. Yoe Enterprises is not entitled to recover the amount of those fees from Crescent.

The trial court also awarded Yoe and Yoe Enterprises certain litigation expenses:

> [T]he court finds that Mr. Yoe and [Yoe Enterprises] incurred expert witness fees for depositions and for this trial. Specifically, Mr. Yoe employed an accountant, Mike Costello, . . . who testified on behalf on Mr. Yoe and [Yoe Enterprises] as their accounting and valuation expert. The court found in it[]s final order that Mr. Costello engaged in an extensive review of the financial records of Crescent and all costs associated with the FITS product development. Mr. Costello was deposed by Crescent prior to the trial, and Mr. Costello testified extensively at the trial as an expert witness. The court finds that Mr. Yoe and [Yoe Enterprises] are entitled to these expert witness fees for depositions and for trial, as well as trial preparation/non-testimony time. With regard to other litigation costs and expenses, the court finds that *pursuant to the terms of the provisions of the February 15, 2012 executive employment agreement, the prevailing party is entitled to receive the costs and expenses of the litigation from Crescent, including all expert witness fees pursuant to the contractual provision in the February 15, 2012 executive employment agreement*. The court finds that Mr. Yoe and [Yoe Enterprises] incurred expert witness fee expenses for the time spent by Mike Costello and his review of the books and the records of Crescent, his preparation of his expert report and his preparation for deposition and trial. *Mr. Yoe and [Yoe Enterprises]* are entitled to recover these expenses.

(Emphasis added.) Again, because Yoe Enterprises is not a party to the employment agreement, it is not entitled to recover its share of the litigation expenses.[7]

---

[7] The award of discretionary expenses was pursuant to Tenn. R. Civ. P. 54.04 and not the "prevailing party" provisions of the employment agreement.

16

On remand, the trial court should determine the proper amount of attorney's fees and litigation expenses attributable to Yoe Enterprises to be deducted from the total award of fees and expenses made by the trial court.

Yoe argues that he is entitled to attorney's fees on appeal. Because Yoe is the primary prevailing party on appeal, we agree. On the other hand, under the analysis discussed above, Yoe Enterprises must bear the costs of its attorney's fees and expenses on appeal. In summary, the trial court shall take evidence and determine the proper amount of attorney's fees and costs to be allocated to Yoe Enterprises both at trial and on appeal. We recognize that this will not be an easy task and may result in a number that is imprecise, but, as discussed in this opinion, it is our view that justice requires such an effort under these unusual circumstances.

## V.

We vacate so much of the trial court's judgment as grants attorney's fees and litigation costs to Yoe Enterprises. We affirm the trial court's judgment that Yoe is entitled to fees and expenses, but vacate the amount of the award. This case is remanded to the trial court for a hearing to determine how much of the fees and expenses awarded to Yoe and Yoe Enterprises is applicable to the professional services rendered to, and expenses of, Yoe Enterprises. Once this has been determined, the trial court will deduct that found amount from the total fee and expenses and award the balance to Yoe. At the hearing on remand, the trial court will determine, and award to Yoe, his fees and expenses on appeal. Except as addressed in this opinion, the trial court's judgment is affirmed. Costs on appeal are taxed equally to Crescent Sock Company and Yoe Enterprises, Inc. This case is remanded for further proceedings consistent with the mandate of this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

17